# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| AMY ELIZABETH CONNOR BOWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-414 |
| | ) | |
| BRAD DOUGLAS PAISLEY; CARRIE | ) | Judge Trauger |
| MARIE UNDERWOOD; JOHN KELLEY | ) | Magistrate-Judge Bryant |
| LOVELACE; CHARLES CHRISTOPHER | ) | |
| DUBOIS; FRANK MANDEVILLE | ) | |
| ROGERS V; SEA GAYLE MUSIC, LLC; | ) | |
| EMI APRIL MUSIC, INC.; and SONY | ) | |
| MUSIC ENTERTAINMENT d/b/a | ) | |
| ARISTA NASHVILLE, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

The plaintiff, Amy Elizabeth Connor Bowen, professionally known as "Lizza Connor" ("Plaintiff"), hereby opposes the Defendants' Motion to Dismiss the Amended Complaint ("Motion to Dismiss") (D.E. 50), as follows:

### I. INTRODUCTION

In their Motion to Dismiss, the Defendants invite the Court to listen to the two songs at issue and take the factually intensive issue of substantial similarity out of the jury's hands. Defendants' Memorandum of Law ("Defts. Memo."), at 16. Yet, the Defendants give the court no guidance for finding the songs so lacking in similarity that no reasonable juror could find substantial similarity. The Defendants (correctly) tell the Court that it must "filter out" non-protectable elements, yet at this early stage, they can point to no "generic

1

elements" that must be filtered out. *Id*. Then, they blandly assert that the songs will "sound[] very different from each other," based on (1) an incorrect standard for substantial similarity, and (2) a bad misreading of one of the Amended Complaint's allegations. *Id*. at 17. So eager are the Defendants to find a substantial-similarity standard to their liking, *id*. at 10, 17, that they fail even to cite to the Sixth Circuit's most recent pronouncement on the subject, *Bridgeport Music v. UMG Recordings*, which also happens to be the Sixth-Circuit authority most relevant to this case.

By contrast, the Plaintiff describes in her Amended Complaint a number of points of similarity between the two songs, focusing on the songs' "hooks." The Defendants prefer that the Court ignore those elements because country-music fans cannot "discern" them. That misses the point. Casual listeners of popular music might not "discern" musical techniques, they certainly appreciate them. Defendants make no other attempt to address these detailed points of similarity. Defendants further overlook the role that access plays in deciding the essential element of copying. As a result, Defendants' Motion to Dismiss falls far short. All of this assumes that *Twombley* and *Iqbal* even apply to complaints, such as the Amended Complaint, governed by Rule 84 of the Federal Rules of Civil Procedure, which provides that the Appendix Forms "suffice under these rules."

## II. PROCEDURAL HISTORY

Plaintiff filed this action for copyright infringement against the Defendants on May 1, 2013. (D.E. No. 1.) Because of the sheer number of defendants, it took some time to effect service on all of them. (D.E. Nos. 5–11, 29.) In addition, the original complaint had mis-named the two corporate defendants. (D.E. Nos. 13, 26–27.) On July 2, 2013, Defendants jointly filed a motion to dismiss the original complaint, arguing in part that the

complaint itself provided too little detail regarding the substantial similarity between the Original Song and the Defendants' Song. (D.E. No. 31 & 32, at 9–10.) The Defendants also asked the Court to take judicial notice of, among other things, Plaintiff's deposit copy of her original recording of the Original Song and the commercially-available copy of the Defendants' Song. (D.E. Nos. 33–34.) In doing so, the Defendants invited the Court to listen both recordings in connection ruling on the motion to dismiss. (D.E. Nos. 32.)

In order to clean up the pleadings, provide the Court with all of the relevant recordings of the songs at issue, and address Defendants' arguments that the complaint lacked sufficient detail on the issue of substantial similarity, Plaintiff amended her complaint, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), mooting the motion to dismiss and request for judicial notice. (D.E. Nos. 39–44.) The Amended Complaint not only contains much more detail about the substantial similarities between the two songs, but it attached two recordings of the Original Song and the commercially-available recording of the Defendants' Song. (D.E. No. 39, Ex. A.) The additional recording is a more professionally produced version of the Original Song, recorded some time after Plaintiff had filed for copyright registration. (*Id.*, track 2.)

The Defendants have now filed a motion to dismiss the Amended Complaint, again inviting the Court to listen to the songs, but this time complaining that the Plaintiff has been **too** detailed in her allegations of substantial similarity. (D.E. 51, at 17.) Having complained about the lack of allegations, Defendants now ask the Court, without citation, to "disregard the alleged musicological similarities between the works" because they are "imperceptible to the ordinary observer," in particular to fans of country music. (*Id.*)

Case 3:13-cv-00414   Document 56   Filed 08/29/13   Page 3 of 26 PageID #: 480

### III. FACTUAL BACKGROUND

In 2007, Plaintiff was[1] a composer of music and performing artist, working in Nashville. (Am. Compl. ¶ 13[2].) In the Fall of that year, Plaintiff set to work on the Original Song, sketching out the chorus, melody and lyrics. (*Id*.) By March 2008, she had finalized the song, and recorded it in a solo, acoustic performance, as a MP3 recording (the "Original Demo Recording"). (*Id*.)

### A.       Defendants' Access to the Original Song

During that time, Plaintiff was also attending the Country Music Songwriting Workshop (the "Workshop"), held from February to May 2008. (¶ 29.) Participants paid $500 to improve their songwriting skills "through intensive song critiques." (*Id*.) These intensive critiques were provided, in part, by well-known songwriters who served as mentors and advisors. (¶ ¶ 30–31.) Both Defendant Lovelace and DuBois served in this capacity for the Workshop. (¶ 30.)

At the March 3, 2008, meeting of the Workshop, Defendant Lovelace was the featured advisor. (¶ 31.) Plaintiff performed the Original Song at that meeting because she believed it was one of her most marketable songs. (*Id*.) She told the other participants and Defendant Lovelace that the song would work well as a duet. (*Id*.) After her performance, Defendant Lovelace extensively critiqued the Original Song. (*Id*.)

The Workshop was not the only place Plaintiff performed the Original Song. (¶ 32.) She performed in and around Nashville, including three times at the Bluebird Cafe, at least nineteen times from 2008 to 2011. (*Id*.) Both audience members and industry insiders

---

[1] She remains so, though she now works in Dallas, Texas. (Am. Compl. ¶¶ 3, 13.)

[2] Subsequent parenthetical citations are to the Amended Complaint, except where indicated.

enjoyed the song and told Plaintiff so. (¶ ¶ 33, 39.) Industry insiders further told Plaintiff that the Original Song had "hit potential." (¶ 33.) Plaintiff decided, therefore, to focus on plugging the Original Song more than her other songs. (¶ 39.) All she needed was to be credited for one successful song to break into the music industry, and the Original Song seemed her best bet. (*Id.*)

As a result, a Nashville song publisher, Rod Creagh d/b/a 3 Wire Music ("3 Wire") offered Plaintiff a single-song deal in late 2008. (*Id.*) 3 Wire preferred to cut a new, more polished recording of the Original Song to use in plugging the song and paid to have one made (the "Creagh Demo Recording"). (*Id.*) With the Creagh Demo Recording in hand, 3 Wire then employed Sherrill Blackman to plug the Original Song to music labels, publisher and artists across Nashville for the next ten months. (*Id.*)

In September 2009, Plaintiff was still shopping the Original Song. Her ASCAP representative, Chad Green, was eager to give the song as much exposure as possible. (¶ 35.) He arranged for Plaintiff to meet with Bobby Rymer, who was the Head of Publishing for Montage Publishing (now known as The Writer's Den Music Group) ("Montage"). (*Id.*) Plaintiff worked with Montage to improve the Original Song, and she provided a copy of the Original Demo Recording. (¶ 36.) Mr. Rymer said he would "shake out the bushes," *i.e.*, plug the song. (*Id.*) At that time, Montage employed Laura Wright as its assistant song plugger. (¶ 37). Ms. Wright would later leave Montage to work for Defendant EMI April, which is Defendant Lovelace's publisher. (*Id.*)

On or about May 22, 2011, Plaintiff read an article about Defendant Paisley's newly released CD, *This Is Country Music*, which mentioned that one of the songs was a duet with Defendant Underwood entitled, "Remind Me" (the "Accused Recording"). (¶

51.) The article also mentioned that "Remind Me" was credited to Defendants Paisley, Lovelace and DuBois. (*Id*.) Plaintiff immediately remembered how she played the Original Song for Defendant Lovelace at the Workshop, but she assumed that the title and Lovelace's involvement were just coincidences. (*Id*.)

A few days later, however, Plaintiff received a call from friend who was familiar with the Original song, congratulating her on having her song recorded by Brad Paisley. (¶ 52.) Plaintiff said that she was not credited as a writer of the song and that there must be some mistake. (*Id*.) But the friend insisted that what she had heard sounded similar enough to the Original Song that it had to be at least based on the Original Song. (*Id*.) Plaintiff quickly found a way to listen to "Remind Me" and began to weep. (*Id*.) Not only had her song been copied, but it would now be impossible to keep plugging her most marketable song—the song that was to launch her career as a songwriter. (¶ ¶ 53–54.) Three hard years of plugging her song were for nothing.

## B.      Points of Similarities Between the Songs

Defendants took the most important part of Plaintiff's song: the Original Song's "hook." (¶ 41.) A hook is a musical and lyrical phrase that catches the listener's ear. (*Id*.) It normally accompanies the chorus of a popular song and is repeated several times. (*Id*.) If there is only one thing a listener remembers about a popular song, it will be the hook. (*Id*.) In both the Original Song and the Defendants' Song, the hooks accompany the many renditions of the lyrics "remind me" and "baby, remind me." (¶ ¶ 42–43.) Good examples may be found at the :42 mark of the Original Demo Recording and the Creagh Demo Recording, and at the 1:00 mark of the Accused Recording. (¶ 42.)

When the Court listens to the hooks of the two songs, it will be immediately apparent that they are substantially similar. (¶ ¶ 40, 50, Ex. A.) What makes the hooks sound the same is a combination of a number of shared musical elements:

- The hooks are accompanied by a nearby partner phrase, "Baby, remind me," that musically echoes the hook. In the Original Demo and Creagh Demo Recordings, for example, the hook occurring at :42 mark is echoed by the partner phrase at the 1:00 mark. In the Accused Recording, for example, the hook occurring at the 1:42 mark is echoed by the partner phrase at at the 1:45 mark. (¶ 43.)

- The hooks are repeated in close proximity, and repeated in the same way. In both songs, the second iteration always reaches a full tone higher than the first iteration. In the Original Demo and Creagh Demo Recordings, for example, the second iteration of the hook at :47 is a full tone higher than the first iteration at :42. In the Accused Recording, for example, the second iteration at 1:04 is a full tone higher than the first iteration at 1:00. (¶ 44.)

- The hooks always ascend in pitch from "re-" to "-mind," then descend in pitch from "-mind" to me." The decent in pitch in the Defendants' Song is always by either a minor 3rd interval or a perfect 4th interval. These intervals were borrowed from the Original Song: the minor 3rd interval can be heard at the :47 of the Connor Demo and Creagh Demo Recordings, and the perfect 4th interval can be heard at the 2:50 mark. (¶ 44a.)

- The hooks' melody normally cross a bar, a compositional technique known as "erasing or blurring the bar." This technique creates a temporary rhythmic disorientation. (¶ 44b.)

- The hooks, and especially the partner phrases, frequently employ a "double melisma" in the phrase "-mind me." A melisma is a musical technique in which a lyrical syllable is sung or played across more than one tone. In both songs, "-mind" is carried across two tones, then "me" is carried across three or more tones.

These shared musical techniques take on special importance because the songs both vary the hook melody throughout. (¶ 46.) The Original Song varies the hook at least slightly eight times out of eleven occurrences, while the Defendants' Song does so sixteen times out of nineteen occurrences. (¶ 47.) Although the hooks' melodies vary slightly from iteration to iteration, the shared musical elements described above do not, for the most part. (¶ 48.) Of course, the more one varies a theme, the more important the constant musical elements (*i.e.*, the elements that do *not* change from variation to variation) become. (¶ 48.) Without constant musical elements, the variations risk becoming just a incoherent and unrelated collection of melodies. (*Id.*) In addition, this variation of a theme is itself a point of similarity between the two songs. (¶ ¶ 46–48.)

The hooks are not only qualitatively important to the songs, but they are quantitatively important. (¶ 49.) In the Original Demo Recording, the hooks account for 16.7% of the song's length. (*Id.*) In the Creagh Demo Recording, they account for 21%. (*Id.*) And in the Accused Recording, they account for 31.8% of the song's total length. (*Id.*)

## IV. ARGUMENT

To state a claim for copyright infringement, Plaintiff must plead (1) that she owns a valid copyright in the Original Song, and (2) that the Defendants copied the Original Song without her permission. *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267,

274 (6th Cir. 2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Defendants do not challenge Plaintiff's ownership of the copyright in the Original Song, so the only question is whether Defendants "copied" the Original Song.

The element of unauthorized copying may be established directly or indirectly. *See id.* Plaintiff may establish the element directly by pleading "direct evidence" of the Defendants' copying. *Id.* However, because evidence of direct copying is somewhat rare, Plaintiff may also prove it "indirectly by showing that the [Defendants] had access to the [Original Song] and that there is substantial similarity between it and [the Defendants' Song], thus giving rise to an inference of copying." *Id.*

Here, Plaintiff states a claim for copyright infringement for three independently-sufficient reasons: (1) the Amended Complaint complies with Federal Rule of Civil Procedure 84, which overrides any other requirements; (2) the Amended Complaint alleges direct copying of the Original Song; and (3) the Amended Complaint alleges, to a legally sufficient degree, Defendants' access the Original Song and substantial similarity between the two songs.

## A.     The Amended Complaint Complies with Rule 84.

Federal Rule of Civil Procedure 84 provides that the "forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." One of those forms, Form 19, is a complaint for copyright infringement. With respect to the essential elements of copyright infringement, Form 19 requires allegations only of (1) the date on which the plaintiff created the work, (2) that the work is original and may be copyrighted, (3) that the copyright in the work was registered, (4) that the defendant infringed the copyright by promulgating another work, (5) the identity of the allegedly

infringing work, (6) that the infringing work was copied from the plaintiff's work; and (7) that the defendant will continue to infringe the copyright by continuing to promulgate the allegedly infringing work.[3] *See* Fed. R. Civ. P., app., Form 19.

"A proper use of a form contained in the Appendix of Forms effectively immunizes a claimant from attack regarding the sufficiency of the pleadings." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013); *R+L Carriers, Inc. v. DriverTech LLC*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). Where an Appendix Form is involved, one "need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Id.* (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)). The new pleading standards annunciated *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) do not change the effectiveness of the Forms. "[T]o the extent any conflict exists between *Twombly* (and its progeny) and the Forms regarding the pleadings requirements, the Forms control." *K-Tech*, 714 F.3d at 1283.

In *Automated Transactions, LLC v. First Niagara Financial Group*, the U.S. magistrate judge was confronted with problem of how to reconcile Rule 84 with *Twombly* and *Iqbal*. 2010 U.S. Dist. LEXIS 141275, at *7–*10 (W.D.N.Y. Aug. 31, 2010). The magistrate judge concluded that they could not be reconciled and, therefore, the Appendix Forms must govern. *Id.* at *10–*13. He reasoned, "Notwithstanding the Appendix Forms' failure to satisfy the pleading requirements of *Twombly* and *Iqbal*, Rule 84 states that they 'suffice under these rules,' and 'federal courts have no more discretion to disregard a Rule's

---

[3] Form 19 also includes allegations relating to publication and notice to the defendants, but since those do not constitute any element of a claim for copyright infringement, they must be regarded as optional. 1 *Nimmer on Copyright* § 12.09[A][1].

mandate than they do to disregard constitutional or statutory provisions'." *Id.* at *10

(quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)). "When

confronted with an 'irreconcilable conflict in Supreme Court authority,' I must apply that

authority which 'more closely adheres to the traditional view'." *Id.* at *11 (quoting *Stout v.

Int'l Bus. Mach. Corp.*, 798 F. Supp. 998, 1001, 1007 (S.D.N.Y. 1992)). "Therefore, unless

or until Rule 84 is amended, I conclude that the sufficiency of [the plaintiff's] …

allegations is governed by [the] Appendix Form …, not by the requirements of *Twombly*

and *Iqbal*." *Id.* at *12. The magistrate's view has since been confirmed by *K-Tech* and *R+L

Carriers*.

    Here, the Amended Complaint meets with all of the requirements of Form 19. It

describes the date Plaintiff created the Original Song (March 2008). (¶ 14.) It alleges that

the Original Song is an original work that may be copyrighted, and attached a copy of the

Original Song. (¶ 15 & Ex. A.) It describes the process of registering the copyright in the

Original Song and attaches the certificate. (¶ ¶ 16–17 & Ex. B.) It describes how the

Defendants infringed the Original Song, how Defendants Lovelace, DuBois and Paisley

wrote an infringing song, how Defendant Rogers produced the infringing song, how

Defendants Paisley and Underwood publicly performed the infringing song, and how

Defendant Sony caused the infringing song to be reproduced, downloaded and played

over the air. (¶¶ 21–26, 55–68.) It identifies and attached a copy of the allegedly

infringing song. (¶ ¶ 24, 27 & Ex. A). It alleges that the infringing song "copied and

prominently used a qualitatively important element from the Original Song." (¶ 21.) And it

alleges how the Defendants will continue to infringe the copyright in the Original Song.

(¶ ¶ 60–62, 65–66, 74). No more is required at this stage.

**B.      The Amended Complaint Alleges Direct Copying.**

As explained above, to prove unauthorized copying, Plaintiff does not necessarily have to plead and prove access and substantial similarity: she may plead and prove direct evidence of copying. *See Bridgeport Music*, 585 F.3d at 274. Plaintiff might ultimately be forced to rely on indirect proof, but at the pleadings stage, she is entitled to plead direct evidence of copying. (¶ ¶ 21, 74.)

**C.      The Amended Complaint Alleges Indirect Evidence of Copying.**

"Since direct evidence of copying is rarely available, a plaintiff may establish an inference of copying by showing (1) access to to the allegedly-infringing work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004). Here, the Defendants to not challenge Plaintiff's access-related allegations. (Defts. Memo. at 6 n.7.) However, Plaintiff's allegations of Defendants' access remain relevant to a determination of copying because the **degree** of access is important. Under Sixth Circuit authority, the standard of proof for access and substantial similarity are inversely proportional to each other, such that "where the similarity between the two works is strong, less compelling proof of access may suffice, **and vice-versa**." *Stromback*, 384 F.3d at 293 (emphasis added); *see also Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) ("[W]e require a lower standard of proof on substantial similarity when a high degree of access is shown."). Thus, if the Court finds Plaintiffs' allegations regarding Defendants' access to the Original Song to be strong, a lower showing of substantial similarity will be required to sufficiently plead copying.

However, regardless of the strength of the proof of access, there still must be **some** showing of substantial similarity.[4] *See Bridgeport Music*, 585 F.3d at 274.

Here, the Amended Complaint presents an unusually strong case for both access and substantial similarity, much more than is necessary to survive Defendants' Motion.

## 1. Defendants Had Direct Access to the Original Song.

There can be no real question that Defendant Lovelace had direct access to the Original Song. Plaintiff played the Original Song for Lovelace at the Workshop, in front of several witnesses, and Defendant Lovelace extensively critiqued the Original Song. Lovelace is one of the co-writers of the Defendants' Song. (¶ ¶ 29–31.) Through Defendant Lovelace's involvement, the most prominent elements of the Original Song found their way into the Defendants' Song. It does not matter whether Defendant Lovelace consciously or unconsciously caused these elements to be copied. "Everything registers somewhere in our memories, and no one can tell what may evoke it. Once it appears that another has in fact used the copyright as the source of this production, he has invaded the author's rights. It is no excuse that in so doing his memory has played him a trick." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482–83 (9th Cir. 2000) (quoting *Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 147–48 (S.D.N.Y. 1924) (Hand, J.)). Neither are the other Defendants spared, even though they may not have been exposed to the Original Song, because they have been involved in reproducing, distributing and publicly performing the Defendants' Song. *See* 17 U.S.C. § 106.

---

[4] Otherwise, everyone who owned a copyrighted work would be a presumptive infringer because of the high degree of access. Also, while the standard of proof for access and substantial similarity is inversely proportional, it is not exactly symmetrical. There can be infringement on the strength of "striking" similarity, but the reverse is not true.

All of this is to say nothing of Plaintiff's regular and frequent live performances of the Original Song in the same town where most of the Defendants reside (¶ 32); the efforts by 3 Wire to shop the Original Song around Nashville (¶ ¶ 33-34); Montage's efforts to plug the Original Song in Nashville (¶ ¶ 35–36); and Montage's assistant song plugger's later employment by Defendant EMI April (¶ 37).

**2.    The Two Songs Are Substantially Similar.**

The question of substantial similarity "presents one of the most difficult questions in copyright law, and one that is least susceptible to helpful generalizations." 4 *Nimmer on Copyright* § 13.03[A]. As Learned Hand explained in one of the seminal cases of modern copyright law: "The test for infringement of a copyright is of necessity vague." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Hand, J.). Copyright cases "must … inevitably be [decided] ad hoc." *Id*. In deciding the question of substantial similarity, "one should consider the uses for which the [copyrighted work] is intended, especially the scrutiny that observers will give to it as used." *Id*.

In this case, under the correct Sixth Circuit standard for determining substantial similarity—enunciated in *Bridgeport Music*, but studiously ignored by the Defendants—it will be evident that a reasonable juror could find that the Defendants appropriated a qualitatively important portion of the Original Song that is recognizable to an ordinary listener as having come from the Original Song.

**a.    Substantial Similarity Is a Classic Jury Question.**

In light of the necessarily vague standard, it is no surprise that the question of substantial similarity presents "a classic jury question." *Roy Export Co. v. Columbia Broadcasting Sys.*, 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980), *aff'd*, 672 F.2d 1095 (2d Cir.

1982), *cert. denied*, 459 U.S. 896 (1982). As Judge Nixon observed, this is especially true where, as here, the question involves whether the defendant took too much of a qualitatively important portion of the plaintiff's work. *Tree Publ'ing Co. v. Warner Bros. Records*, 785 F. Supp. 1272, 1275 (M.D. Tenn. 1991), *cited with approval by*, Bridgeport *Music*, 585 F.3d at 276; *see also Palmer v. Braun*, 155 F. Supp. 2d 1327, 1336–37 (S.D. Fla. 2001) (observing, when faced with the same question, that "[t]his standard, like so many others in copyright law, is far from clear and thus presents a classic jury question"). Indeed, although he denied the plaintiff's motion for preliminary injunction, Judge Nixon observed, "Whether a jury will afford this four word lyric expression copyright protection is an uncertain question." *Id*. at 1275. Taking even a four-word lyric (without the music) might constitute copyright infringement, if it is important enough to the copyrighted song, and that question was for the jury. *See id*.

Accordingly, "summary judgment, particularly in favor of a defendant, is a practice to be used sparingly because substantial similarity is often an extremely close question of fact." *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009) (granting summary judgment to defendant but on the issue of access); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (reversing grant of summary judgment); *Wickham v. Knoxville Int'l Energy Exposition, Inc*., 739 F.2d 1094, 1097 (6th Cir. 1984) (affirming grant of summary judgment where plaintiff failed to assert any protectable expression). Only in the rare case where no reasonable trier of fact could find substantial similarity may a court take the question out of the fact-finder's hands. *See id*.

If courts in the Sixth Circuit are to be sparing in granting defendants' motions for summary judgment based on substantial similarity, it is nearly unheard of for a court in the

Sixth Circuit to grant a defendant's Rule 12(b)(6) motion on such grounds. Indeed, the Plaintiff and Defendants have found only one, *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005, 1011 (E.D. Mich. 2011), in which a court in the Sixth Circuit has granted a defendant's Rule 12(b)(6) motion on substantial-similarity grounds—and that case presents a very different set of facts than that presented here. In *Pollick*, the plaintiff obtained a copyright for a particular design of diapers that looked like bluejeans. *Id.* at 1007. After the plaintiff submitted a picture of his "diaper jeans" to the defendant, the defendant began to manufacture and distribute its own "jean diapers." *Id.* Although the designs were obviously different, plaintiff evidently believed he had a monopoly on all "diaper jeans." *See id.* at 1011–12 ("Plaintiff asserts that 'he is asserting rights over the creative expression of the diapaers designed to resemble jeans'."). The court correctly "filtered out" the "idea" of "diaper jeans" from the scope of the plaintiff's copyright, leaving the plaintiff with no actionable points of similarity. *See id.* at 1012.

      **b.**    **The Court May Listen to the Creagh Demo Recording.**

The Defendants contend that the Court should disregard the Creagh Demo Recording on grounds that Plaintiff lacks standing to assert the copyright in that sound recording. (Defts. Memo. at 11.) This would be a minor point—the Creagh Demo Recording is hardly crucial to Plaintiff's case—except that Defendants misapprehend the nature of the copyright Plaintiff is asserting in this case. To be clear, Plaintiff is asserting copyright in her **composition**, ***not*** in a particular sound recording. *Compare* 17 U.S.C. § 102(a)(2) ("musical works") *with id.* § 102(a)(7) ("sound recordings"). It is, in fact, something of a legal absurdity to call the Creagh Demo Recording as the "Unregistered

Recording" because Plaintiff is fairly obviously not asserting copyright in any sound recordings, but in a musical composition.

To the extent the Defendants are arguing that the Creagh Demo Recording contains new original material not found in the Original Song, and thus comprises a slightly different (and unregistered) musical composition, the Defendants needn't have worried. In every way that matters to this lawsuit, the Creagh Demo Recording is as valid a way to experience the Original Song as the Original Demo Recording, as will be obvious when both recordings are played. It is true that the Creagh Demo Recording has elements, such as the mandolin playing in the background, not found in the stripped-down Original Demo Recording, but none of those elements is relevant to Plaintiff's claims. To the contrary, every point of similarity between the Original Song and the Defendants' Song may be found in either the Original Demo Recording or the Creagh Demo Recording. So long as this is the case, either recording is an equally valid reproduction of the Original Song that the Court may use in determining whether the Defendants copied the Original Song. *See Three Boys Music*, 212 F.3d at 486–87; *Nicholls v. Tufenkian Import/Export Ventures, Inc.,* 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005) (refusing to limit the scope of copyright protection to the deposit copy where the asserted works did not "vary in essential respects from" the deposit copy); *KnowledgePlex, Inc. v. Placebase, Inc.,* 2008 U.S. Dist. LEXIS 103915, at *29–*30 (N.D. Cal. Dec. 17, 2008) (same).

The Creagh Demo Recording serves two other purposes in this lawsuit. First, it is evidence of the general level of interest in the Original Song and of Plaintiff's efforts to "plug" it. Second, it demonstrates that different sound recordings of the same musical composition can have significant differences from each other, yet still be reproductions of

the same copyrighted musical composition. Much was added to the Creagh Demo Recording, yet it is still demonstrably the same song as the Original Song. It thus underscores a key concept in copyright law, in particular in substantial-similarity analyses: it is the similarities, not the differences, that matter. *Harper & Row Publ'ers, Inc. v. Nation Enters*., 471 U.S. 539, 565 (1985). Had the Creagh Demo Recording been produced as a power ballad (complete with electric guitar instead of mandolin) or an uptempo rock song, or a treacly love song (complete with strings), it still would have been a reproduction of the Original Song.

### c. The Sixth Circuit's Substantial Similarity Standard

The Sixth Circuit has condensed the inquiry into substantial similarity into a two-part test. *Bridgeport Music*, 585 F.3d at 274. First, the court identifies the elements of the copyrighted work that are protectable by copyright. *Id*. Then, the court determine whether the allegedly infringing work is substantially similar to the protectable elements of the copyrighted work. *Id*.

In the first step, the court filters out elements that are not original to the author, together with other unprotectable elements, such as *scénes á faire* ("stock themes"), indispensable or standard aspects of a work, or those that follow directly from unprotectable ideas. *Id*. & n.2. Here, the Defendants suggest that "the generic elements of [the songs] attributable to the fact that they are both contemporary country music songs" should be filtered out, but do not actually point to any such element. This is just as well, since filtering usually requires expert testimony—as to, in this case, what elements are considered "generic" to country music—which is obviously premature at this point. *See*

*Kohus,* 328 F.3d at 854–55 (6th Cir. 2003) (following *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946)).

In the second step, the court applies the Sixth Circuit's "ordinary observer" test: there is substantial similarity between the two works if "the work is recognizable by an ordinary observer as having been taken from" the copyrighted work. *Murray Hill Publ'ns, Inc. v. ABC Comms., Inc.*, 264 F.3d 622, 633 (6th Cir. 2001); *see also Stromback*, 384 F.3d at 297 ("...by taking material of substance and value."). Thus, here, Defendants need not have taken very much from the Original Song, so long as what they took was qualitatively important to the Original Song.[5] *See Bridgeport*, 585 F.3d at 275. "However quantitatively small, if the similarity is qualitatively important, the trier of fact may properly find substantial similarity." *Tree Publ'ng*, 785 F. Supp. at 1275, *cited with approval*, *Bridgeport*, 585 F.3d at 276; *see also Murray Hill*, 361 F.3d at 320 ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity."); *Brainard v. Vassar*, 625 F. Supp. 608, 617 (M.D. Tenn. 2009) (same). "The proper question to ask is whether the defendant appropriated, either quantitatively or qualitatively, constituent elements of the work that are original, such that the copying rises to the level of unlawful appropriation." *Neal Publ'ns, Inc. v. F&W Publ'ns, Inc.*, 307 F. Supp. 2d 928, 932 (N.D. Ohio 2004), *cited with approval*, *Bridgeport*, 585 F.3d at 276.

Courts in the Sixth Circuit have thus found infringement, or at least have been prepared to find infringement, where only a very small portion of the copyrighted work

---

[5] *Bridgeport Music* speaks in terms of "fragmented literal similarity," 585 F.3d at 275, but it is clear that "fragmented literal similarity" is merely one aspect of the qualitative-quantitive analysis of the amount taken by the defendant. *See id.* at 275–76 (following *Murray Hill*, 264 F.3d at 633, *Neal Publ'ns*, 307 F. Supp. 2d at 932 and *Tree Publ'ng*, 785 F. Supp. at 1275).

Case 3:13-cv-00414   Document 56   Filed 08/29/13   Page 19 of 26 PageID #: 496

was taken. In *Bridgeport Music*, the court found the repeated musical lyric "bow-wow-wow, yippee yo, yippee yea" (together with two other minor elements) sufficient to support a jury verdict of copyright infringement. 585 F.3d at 276–77. In *Murray Hill*, the Sixth Circuit was prepared to find that a single line of dialogue from a movie could constitute copyright infringement, though it ultimately decided the line was far too peripheral to the plaintiff's movie, and too driven by "functional considerations," to support such a verdict. 264 F.3d at 633. In *Brainard*, this Court, just six months before *Bridgeport Music*, was prepared to find substantial similarity between just the choruses of two songs: "Given the central importance of the choruses to the songs' commercial viability and value, sufficient similarity here could, potentially, demonstrate substantial similarity between the songs as a whole."[6] 625 F. Supp. 2d at 620. In *Tree Publishing*, Judge Nixon was prepared to find a four-word lyric ("better class of losers") protectable, and though he denied the plaintiff's motion for preliminary injunction, it was still a question for the jury. 785 F. Supp. at 1275. Elsewhere, courts have consistently denied defendants' motions for summary judgment where all that was taken was little more than the musical[7] hook phrase. *See Three Boys Music*, 212 F.3d at 485; *Ellis v. Jean*, 2011 U.S.

---

[6] The Court's observation here echoes the qualitative-quantitative analysis later embraced by *Bridgeport Music* and used by *Tree Publishing*. "While the question is close," the Court ultimately granted the defendants summary judgment on this issue. *Id.* at 621. Plaintiff would point out that the two songs' choruses here are much more similar than those in *Brainard*, and Plaintiff has pleaded a much stronger case for access than the *Brainard* plaintiffs did. *Id.* at 618 ("Ultimately, the plaintiffs' case for 'access' is certainly not overwhelming..."). Further, the Court had the benefit of the testimony of musicological experts, and found that the plaintiffs' expert was "not a particularly helpful expert for the plaintiffs." *Id.* at 620–21 & n.5. Finally, the case was decided before *Bridgeport Music*, and the plaintiffs apparently did not raise the substantial-similarity standard from *Murray Hill* that *Bridgeport Music* adopted.

[7] The key is whether the defendant took both the music and the lyrics associated with the hook, as opposed to just the lyrics. *See, e.g., Lassin v. Island Def Jam Music Group*, 2005 U.S. Dist. LEXIS 43862, at*12–15 (S.D. Fla. Aug. 8, 2005) (granting defendant's motion for summary judgment where only two-word lyrics from the hook was taken, but not the music); *Boone v. Jackson*, 2005 U.S. Dist. LEXIS 13172, at *11–*13 (S.D.N.Y. July 1, 2005) (same result where single cliched word and accompanying and equally cliched rhythm was taken).

Dist. LEXIS 146700, at *14–*15 (S.D.N.Y. Dec. 16, 2011); *McKinley v. Raye*, 1998 U.S.

Dist. LEXIS 3019, at *17 (N.D. Tex. Mar. 11, 1998); *Santrayll v. Burrell*, 1996 U.S. Dist.

LEXIS 3538, at *5–*6 (S.D.N.Y. Mar. 25, 1996).

The Sixth Circuit's emphasis on quality the material taken arises from and is

consistent with one of Judge Hand's best-known principles of copyright law: "No plagiarist

can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v.*

*Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936), *quoted with approval in*,

*Harper & Row*, 471 U.S. at 565. What matters are the similarities, not the differences,

between the two works. *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607,

618 (7th Cir. 1982). If the similarities are legally substantial, the Defendants "will not be

immunized from liability by reason of the addition in his work of different characters and

varied incidents, nor generally by reason of his work proving more attractive or saleable

than the plaintiff's." 4 *Nimmer on Copyright* § 13.03[B][1][a].

**d.      Defendants Apply the Wrong Standard.**

The Defendants cite to no controlling Sixth Circuit authority in their discussion of

the standard for substantial similarity[8]. Defts. Memo. at 15–17. Most remarkably,

Defendants somehow avoid citing to the current leading Sixth Circuit opinion on

substantial similarity, *Bridgeport Music v. UMG Recordings* 585 F.3d at 274. *Bridgeport*

*Music* is not only the most recent pronouncement by the Sixth Circuit on the subject of

substantial similarity, but it is also the most relevant to this case. *Bridgeport Music* held

that appropriating a quantitatively small but qualitatively important portion of the plaintiff's

work constitutes copyright infringement. *Id.* at 275. The portion at issue was "bow wow

---

[8] Defendants cite to *Kohus*, but only for a proposition involving the admissibility of expert evidence. Defts. Memo. at 18.

wow, yippee yo, yippee yea." *Id.* at 272. *Bridgestone Music* also set forth the proper test, which Defendants neither apply nor recognize: "whether the work is recognizable by an ordinary observer as having been taken from the copyrighted source." *Id.* at 276 (quoting *Murray Hill*, 264 F.3d at 633)).

This is not to cast aspersions on the test that the Defendants do choose, only that (1) the test is not recognized by the Sixth Circuit[9] (at least not since the Sixth Circuit established its own standard in *Kohus*, 328 F.3d at 853–57), and (2) it is inappropriate for this case. The Defendants' preferred test is Judge Hand's well-known "aesthetic appeal" test from *Peter Pan Fabrics*. 274 F.2d at 489. In that case, Judge Hand was grappling with a problem nearly the exact opposite to the facts of this case. In *Peter Pan Fabrics*, which involved fabric designs[10], the question was how to separate ideas from expression when the points of similarity are fairly abstract, concluding that enough had been taken to constitute copyright infringement. *See id.* Here, by contrast, the Defendants have taken a discrete yet very prominent portion of the Original Song, the hook. This is no less protectable, and no less susceptible to infringement, as the patterns of *Peter Pan Fabrics'* designs. All that matters is whether what was taken was "qualitatively important or [a] crucial element." *Bridgeport Music*, 585 F.3d at 275.

**e.    The Defendants' Hook Is Recognizable to an Ordinary Listener as Having Been Taken from the Original Song.**

Here, the Defendants appropriated the hook from Plaintiff's Original Song—and that will be immediately discernible to an ordinary listener. The Plaintiff joins with the

---

[9] *Murray Hill* cites *Peter Pan Fabrics*, but for a different proposition. 361 F.2d at 319.

[10] Fabric designs explains why the *Pollick* court relied on Peter Pan Fabrics for its substantial-similarity standard, since *Pollick* also involved fabric designs. 817 F. Supp. 2d at 1012.

Defendants to invite the Court to listen to the two songs to determine whether a reasonable jury could possibly find that the Defendants have appropriated a portion of the Original Song that is recognizable as having been taken from the Original Song.[11]

Although Defendants' entire motion is premised on the notion that the songs will not seem substantially similar to the Court if the Court were to listen to them, the Defendants provide little guidance about how they are different. *See* Defts. Memo. at 17. By contrast, Plaintiff raises at least six qualitatively important points of similarity (described in greater detail in Part III.B above): (1) the hooks in both songs are accompanies by a nearby partner phrase "Baby remind me" that musically echoes the hook (¶ 43); (2) the hooks are repeated in close proximity—and repeated the same way, in that the second iteration always reaches a full tone higher than the first iteration (¶ 44); (3) the hooks always ascend in pitch from "re-" to -mind," then descend in pitch from "-mind" to "me," and normally the descent is a minor 3rd interval or a perfect 4th interval (¶ 44a); (4) the hook's melody normally employs "erasing or blurring the bar" to create a temporary rhythmic disorientation (¶ 44b); (5) the hooks, and particularly the partner phrases, frequently employ a double melisma (carrying a lyrical syllable across more than one tone, back to back) with the lyrical syllable "-mind" (always just two tones) and "me" (always three or more tones) (¶ 44c); and (6) the songs each vary the melody used for the hooks and partner phrases throughout the songs, though keeping to the musical elements above (¶ ¶ 46–48).

---

[11] As explained in Part IV.C.2.b above, to listen to the Original Song, the Court may listen to either the Original Demo Recording or the Creagh Demo Recording. The Defendants are simply incorrect that the Creagh Demo Recording must be excluded.

Defendants' only response to these points of similarity is dismiss them as so much musicological claptrap. *See* Defts. Memo. at 17. In particular, Defendants believe that country music fans are incapable of discerning such things as minor 3rd intervals. *Id*. Defendants cite no authority, legal or factual, for this proposition. In any event, Defendants badly miss the point of using musicological terms to describe music. No one seriously contends that listeners seek to dissect and identify musical techniques when casually listening to music. They may not know what a "melisma" is, or that a particular interval is a minor 3rd. But that does not mean that listeners don't experience and appreciate those techniques. By Defendants' logic, songwriters have developed these musical techniques essentially for no reason. To the contrary, these musical techniques are in the songwriter's toolkit, and Plaintiff's particular copyrightable combination of these techniques has been appropriated by the Defendants.

Defendants also badly misunderstand paragraph 46 of the Amended Complaint, which alleges, "In each song, the melodies that accompany the hooks and partner phrases are constantly varied, although each variation is just as constantly faithful to the elements described above." The Defendants apparently take this allegation to be an admission that the two songs' melodies are different. Defts. Memo. at 17. The truth is quite different. Both the Original Song and the Defendants' Song vary the hook melodies, like a theme and variations. (¶ ¶ 46, 47.) Far from being a point of difference, this variation is an important point of similarity. (¶ 48.) More important, the variations only serve to foreground the very musical techniques that the songs have in common. (*Id*.) The more one varies a theme— *i.e.*, vary some elements (but not others) of a melody in pleasing ways—the more important the unchanging elements become to maintain cohesion. If one were to change

*every* element of a theme, one would not have a theme and variations but just a collection of unrelated themes, and in all likelihood an unpleasant listening experience. (*Id.*)

The hooks are not only qualitatively important to the songs, but they are quantitatively important. (¶ 49.) In the Original Demo Recording, the hooks account for 16.7% of the song's length. (*Id.*) In the Creagh Demo Recording, they account for 21%. (*Id.*) And in the Accused Recording, they account for 31.8% of the song's total length. (*Id.*)

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss the Amended Complaint should be denied in its entirety.

/s/Richard G. Sanders
Richard G. Sanders (Tenn. BPR No. 23875)
AARON & SANDERS, PLLC
11 Lea Ave., Ste. 606
Nashville, TN 37210
(615) 734–1188
Fax (615) 250–9807
rick@aaronsanderslaw.com

Kenneth L. Connor (Tenn. BPR No. 20585)
C. Caleb Connor (Tenn. BPR No. 31481)
CONNOR & CONNOR, LLC
224 Park Ave. SE
Aiken, SC 29801
(803) 226–0543
Fax (803) 480–9715

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 29, 2013, a true and correct copy of the foregoing has been served via the Electronic Case Filing system of the United States District Court for the Middle District of Tennessee, which will automatically send email notification of such filing to the following attorneys of record:

Jane G. Stevens
Jeffrey M. Movit
Mitchell Silberberg & Knupp LLP
12 E. 49th St., 30th Fl.
New York, NY 10017

Timothy L. Warnock
Riley Warnock & Jacobson, PLC
1906 West End Ave.
Nashville, TN 37203

Robb S. Harvey
Waller Lansden Dortch & Davis, LLP
511 Union St., Ste. 2700
Nashville, TN 37219

/s/ Richard G. Sanders
Counsel for Plaintiff