UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMY ELIZABETH CONNOR BOWEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-cv-0414 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| BRAD DOUGLAS PAISLEY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

The defendants have filed a Motion to Dismiss (Docket No. 50), to which the plaintiff filed a Response in opposition (Docket No. 56), and the defendants filed a Reply (Docket No. 57). For the reasons stated herein, the defendants' Motion to Dismiss will be denied.

## BACKGROUND

### I. Procedural History

On May 5, 2013, plaintiff Amy Elizabeth Connor Bowen filed this lawsuit, in which she alleges that the defendants, including popular country music singers Brad Paisley and Carrie Underwood, violated her copyright interests in the song "Remind Me," a song that Bowen copyrighted and recorded. (*See* Docket No. 1, Compl.) On July 2, 2013, Bowen filed an Amended Complaint as a matter of right under Fed. R. Civ. P. 12(a)(1)(B), alleging a single count of copyright infringement. (Docket No. 39, Am. Compl.)[1] The defendants have moved to

---

[1]The Amended Complaint attaches two exhibits: (1) a CD containing two recordings of "Remind Me" by Bowen and a recording of the song "Remind Me" by defendants Brad Paisley and Carrie Underwood; and (2) a copy of Bowen's copyright registration for "Remind Me" (among other songs).

1

dismiss the Amended Complaint.

In support of their Motion to Dismiss, the defendants filed a Memorandum of Law (Docket No. 51), the Declaration of Jane Stevens (Docket No. 52), and a Request for Judicial Notice (Docket No. 53).  In the Request for Judicial Notice, the defendants ask the court to take judicial notice of three exhibits to the Stevens Declaration: (1) a copy of the lyrics for "Remind Me" as recorded by Bowen; (2) a copy of the lyrics for "Remind Me" as recorded by Paisley and Underwood; and (3) a copy of the results of a search of the U.S. Copyright Office database using the search term "Remind Me."

The parties appear to agree that the court may take judicial notice of – and may consider – the following materials without converting the Rule 12 motion into a motion for summary judgment: (1) the materials listed in the Request for Judicial Notice, (2) Bowen's original recording of "Remind Me," and (3) Paisley and Underwood's recording of "Remind Me."[2]  The court finds that, because all of the referenced materials are either attached to the Amended Complaint (the sound recordings), are incorporated by reference into the Amended Complaint (the lyrics), or are publicly available(the Copyright Office database search results), it is appropriate for the court to take judicial notice thereof without converting the Rule 12 motion.

## II.     Facts[3]

---

[2]The parties disagree about whether the court should consider a second recording of "Remind Me" by Bowen, which Bowen did not register with the Copyright Office.  As explained herein, although the court need not reach the issue, the portions of that derivative work would likely be relevant to the extent that they contain copyrightable elements from Bowen's original copyrighted recording.

[3]Unless otherwise noted, the facts are drawn from the Amended Complaint and incorporated attachments and, as explained in the previous section, the materials of which the court has taken judicial notice.

2

### A. Bowen's "Remind Me"

Bowen, who performs under the name "Lizza Connor," is a performing artist and composer of music. In 2007, Bowen composed the chorus, melody, and lyrics to a song entitled "Remind Me" (the "Original Song"). At some point between March 2008 and October 2008, Bowen recorded a solo, acoustic performance of the song, which recording the court will hereinafter refer to as the "Original Demo Recording."

On October 15, 2008, Bowen applied to register her copyright in the Original Song with the United States Copyright Office, as part of a collection of songs she had written. She submitted a digital copy of the Original Demo Recording along with a lyric sheet. The Copyright Office approved the application and registered the copyright, effective December 3, 2008.

Between February and May 2008 – after Bowen had composed the Original Song but before she had registered it and the Original Demo Recording with the Copyright Office – Bowen and nine other songwriters participated in a 14-week "Country Music Songwriting Workshop." Throughout the workshop, Bowen performed "Remind Me." Among those performances, on March 3, 2008, Bowen performed "Remind Me" live for music composer and publisher John Kelley Lovelace, who was a featured advisor for that week. After that particular performance, Lovelace extensively critiqued Bowen's song. During the song, Bowen told the audience, of whom Lovelace was a part, that the song would work as a duet. Charles DuBois, a music composer and publisher, also participated as an advisor during the program. Between 2008 and 2011, Bowen also performed the song many times at venues in and around Nashville.

At an unspecified point "near the end of 2008," Bowen entered into a single-song publishing deal for "Remind Me" with Rod Creagh d/b/a Wire Music ("3 Wire"). 3 Wire, acting

3

as publisher, paid for a professional demo recording of "Remind Me," using a recording studio, studio engineer, and professional musicians ("Creagh Demo Recording"). Bowen did not copyright the Creagh Demo Recording.

On September 21, 2009, Bowen and 3 Wire terminated their contractual relationship. On or about September 17, 2009 (shortly before terminating her contract with 3 Wire), Bowen met with Bobby Rymer, the head of "Montage Publishing," now known as The Writer's Den Music Group ("Montage"). Bowen thereafter worked with Rymer and Montage to improve her songs, including "Remind Me." Laura Wright was an assistant "song plugger" for Montage during this time frame. Wright later left Montage to join EMI Music Publishing, which is now known as "EMI April" and acts as Lovelace's publisher.

### B. Paisley and Underwood's "Remind Me"

In late 2010 or early 2011, Brad Paisley, Lovelace, and DuBois worked together to compose a song to be sung by Paisley and Underwood, called "Remind Me." Bowen alleges that they composed the song utilizing copyrightable elements from Bowen's "Remind Me." The general inference is that Lovelace and DuBois were aware of Bowen's song from the songwriting workshop, that Lovelace may also have been aware of Bowen's song through Laura Wright (the former "song plugger" for Montage who later worked for Lovelace's publishing agency), and that some or all of the defendants heard the song during one or more of Bowen's performances in Nashville.

In February 2011, Paisley and Underwood recorded "Remind Me," with Frank Rogers as producer. At some point, Paisley, Underwood, and Rogers transferred their interests in the song to Sony Music Entertainment d/b/a Arista Nashville ("Sony"). From approximately May 2011

4

Case 3:13-cv-00414   Document 58   Filed 12/03/13   Page 4 of 17 PageID #: 584

forward, Sony has distributed the song, and Paisley and Underwood have performed it, generally separately. The Paisley/Underwood version of "Remind Me" was a commercial success, including peaking at "No. 1" on Billboard's chart of country songs and achieving "Platinum" status (over 1 million copies sold).

In the Amended Complaint, Bowen alleges that the Paisley/Underwood version of "Remind Me" is "substantially similar" to Bowen's "Remind Me." Bowen alleges that the "most notable" similarity involves the songs' "hooks," which are musical and/or lyrical phrases that stand out in a popular song and that are easily remembered, such as a particular song's chorus. Here, the hooks include the repetitive use of the phrase "remind me" and "baby, remind me" in close proximity.[4] The hooks occur 9 times in the Original Demo Recording, comprising approximately 17% of the song's 3-minute length, and approximately 19 times in the Paisley/Underwood Recording, comprising approximately 32% of the song's total length. According to the Amended Complaint, the hooks in the Original Demo Recording contain slight variations on underlying melodic elements, including, *inter alia*, (1) an ascension in pitch from "re-" to "-mind", then a descent in pitch from "-mind" to "me," (2) a compositional technique called "blurring" that accompanies the lyric "remind," designed to create "rhythmic disorientation," and (3) a musical technique called a melisma, in which a lyrical syllable is held

---

[4]At times, but not always, Bowen appears to refer to the phrase "Remind me" as the "hook" and the phrase "Baby, remind me" as a "partner phrase." The defendants quibble with Bowen's lack of consistency as to the precise definition of the "hook." At least for purposes of the Motion to Dismiss, the court finds this issue to be largely semantic. After listening to the Original Demo Recording and the Paisley/Underwood Recording, the court understands the point: however they are characterized, the two phrases, along with their particular usage and the associated melody/intonation by which they are expressed, are distinctive elements in each song that are repeated multiple times and effectively constitute the chorus. For purposes of simplicity, the court will refer to these phrases collectively herein as the "hooks" or the "chorus."

5

across more than one tone (here, holding "-mind" across two tones and "me" across three or more tones). According to Bowen, because of these melodic elements, the hooks and associated phrasing would sound essentially the same to a lay listener.

## **STANDARD OF REVIEW**

**I.        Rule 84 Pleading Form**

The Federal Rules of Civil Procedure include an "Appendix of Forms," which contains form complaints for certain types of claims. Under Fed. R. Civ. P. 84, "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." The Advisory Committee Notes to the 1946 amendment of Rule 84 state that "[t]he amendment serves to emphasize that the forms contained in the Appendix of Forms are sufficient to withstand attack under the rules under which they are drawn, and that the practitioner using them may rely on them to that extent."

Form 19, entitled "Complaint for Copyright Infringement and Unfair Competition," contains a short form complaint for a copyright infringement claim. The form is only seven paragraphs, and, in compliance with notice pleading standards, requires only basic allegations of infringement. The form was added April 30, 2007, effective December 1, 2007. Three weeks after that form was added to the appendix, the Supreme Court decided *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Beginning with *Twombly*, and as clarified in *Iqbal* and other recent cases, the Supreme Court redefined the contours of the pleading standards for purposes of Rules 8 and 12, requiring more than simple "notice pleading." *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (discussing impact of *Twombly* and

6

*Iqbal* on sufficiency of Form 18 relating to patent infringement claims).

Following *Twombly* and *Iqbal*, courts have reached differing conclusions about the continuing viability of Rule 84 in patent infringement cases involving Form 18, which is a form patent infringement complaint.[5] At least with respect to Form 18, the circuit courts to address the issue have concluded that compliance with Form 18 is sufficient to state a *direct* patent infringement claim but not an *indirect* patent infringement claim, which is now governed by the plausibility standard. *See, e.g.*, *K-Tech. Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013).[6]

Here, the parties have not identified, nor has the court located in its own research, any authority directly addressing the continuing viability of Form 19, which concerns copyright claims. However, the defendants argue that, in *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511-512 (6th Cir. 2008), the Sixth Circuit implicitly abrogated Rule 84 as it relates to Form 18. There, the district court had dismissed the plaintiff's copyright claim under the *Twombly* standard, because the plaintiff failed to identify which action or publication by the defendant had infringed the plaintiff's copyright. *Id.* at 510-11. On appeal,

---

[5] For example, in *Proxyconn Inc. v. Microsoft Corp.*, 2012 WL 1835680, at *3-*4 (C.D. Cal. May 16, 2012), the court found that "threadbare recitations of the language in Form 18 is [sic] no longer sufficient to state a claim." *Id.*; *see also Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 905 (E.D. Pa. 2001) ("[T]he forms purporting to illustrate what level of pleading is required do not reflect the sea change of *Twombly* and *Iqbal*."); *but see In re Bill of Lading*, 714 F.3d at 1284 (with respect to patent infringement claims, Rule 84 remains viable in certain contexts).

[6] Consistent with their obligation to apply the procedural rules as interpreted by the Federal Circuit with respect to patent infringement claims, district courts within this circuit have applied the Federal Circuit's approach to Form 18 in patent cases. *See*, *e.g.*, *Littlefuse, Inc. v. Pacific Eng'g Corp.*, 2013 WL 4026918, at *1 (E.D. Mich. Aug. 7, 2013); *Cronos Techs., LLC v. v. Camping World, Inc.*, 2013 WL 3936899, at *2 (W.D. Ky. July 30, 2013); *Panini S.p.A v. Burroughs, Inc.*, 2013 WL 3909684, at *5 (S.D. Ohio July 29, 2013).

7

the Sixth Circuit endorsed the district court's application of the *Twombly* standard. The court reasoned that "[c]opyright infringement, like anti-trust actions, lends itself readily to abusive litigation, since the high cost of trying such a case can force a defendant who might otherwise be successful in trial to settle in order to avoid the time and expenditure of a resource intensive case." Thus, it found that "greater particularity in pleading, through showing 'plausible grounds,' is required." *Id.* at 512. Because the plaintiff had pleaded only "bare legal conclusions" and had not "identif[ied] any specific works by defendants that infringe on plaintiff's copyright," the Sixth Circuit affirmed. *Id.* Notably, however, *National Business* did not address the viability of Form 19, which does not appear to have been raised as an issue. Furthermore, it appears that the plaintiff's allegations in that case would not have complied with Form 19 in any case.[7]

The court construes *National Business* as at least requiring application of the *Twombly*/*Iqbal* standard to a copyright infringement claim that will be premised on indirect evidence, which is essentially the type of infringement claim Bowen asserts here. Because, for the reasons explained herein, Bowen's infringement claim survives under the heightened post-*Twombly*/*Iqbal* Rule 12 standard, the court need not determine whether the holding in *National Business* implicitly abrogated Rule 84 as it relates to Form 19.

## II. Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v.*

---

[7] Form 19 requires the plaintiff to identify the infringing material or infringing acts. *See* Form 19 at ¶ 6.

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949-50.

## ANALYSIS

### I. Standard for Copyright Infringement

A claim of copyright infringement has two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To be original, an element must be both an independent creation of its author and involve at least minimal creativity. *Bridgestone Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009). To establish that a work has been copied, a plaintiff must present either (1) direct evidence of the defendant's copying, or (2)

9

prove it indirectly by showing that (a) the defendant had access to the plaintiff's work and (b) that there is substantial similarity between it and the defendant's work, thus giving rise to an inference of copying. *Id.*

Here, for purposes of the Motion to Dismiss only, the defendants do not dispute that the Amended Complaint sufficiently alleges "access" to Bowen's copyrighted material. Although that aspect of the "copying" element of Bowen's infringement claim is not in dispute, the court notes that the Sixth Circuit has indicated that proof of access can affect the degree of proof of similarity required to show copyright infringement.

> [I]n some cases[,] the relationship between the degree of proof required for similarity and access may be inversely proportional: where the similarity between the two works is strong, less compelling proof of access may suffice. [Citing *Ellis v. Diffie*, 177 F.3d 503, 507 (6th Cir. 2004).] *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (stating that under the "inverse ratio rule," *a lower standard of proof of similarity is required where a high degree of access is shown*); *Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946) (stating that "a case could occur in which the similarities were so striking that we would reverse a finding of no access, despite weak evidence of access (or no evidence thereof other than the similarities).")

*Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (emphasis added); *see also Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) ("[W]e require a lower standard of proof on substantial similarity when a high degree of access is shown.").

Within the Sixth Circuit, the "substantial similarity" inquiry involves a two-part test: (1) the court must identify which aspects of the artist's work, if any, are protectable by copyright, and (2) the court must determine whether the relevant portions of the allegedly infringing work are substantially similar to the protectible elements of the artist's work. *Bridgestone*, 585 F.3d at 274. To complete the first part of this test, the court must filter out elements of the work that are not original to the author, as well as so-called *scenes a faire* (or "stock themes"), the

10

"indispensable or standard aspects of a work," or "those that follow directly from unprotectable ideas." *Id.* at 274 (internal quotation omitted). After separating out the unprotectable ideas from the original expressions, "the two works can be compared to determine whether they are substantially similar, a question of fact." *Id.* at 275.

"[T]he copying of a relatively small but qualitatively important or crucial element can be an appropriate basis upon which to find substantial similarity." *Bridgestone*, 585 F.3d at 275; *see also Stromback*, 384 F.3d at 297 ("The misappropriation of even a small portion of a copyrighted work may constitute an infringement under certain circumstances. Even if a copied portion [is] relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity. No plagiarist can excuse the wrong by showing how much of his work he did not pirate.").[8] On the other hand, "random similarities scattered throughout the works are not a proper basis for a finding of substantial similarity." *Id.* (internal quotation omitted). Ultimately, "[s]ubstantial similarity exists where the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Stromback*, 384 F.3d at 297 (internal quotation omitted).

The defendants, largely relying on authority from outside the Sixth Circuit, argue that the court can and should determine at this stage that the Original Recording and the Paisley/Underwood Recording are not "substantially similar" as a matter of law. (*See* Docket

---

[8]In *Bridgeport*, the Sixth Circuit recognized that a copyright claim may be based on "fragmented literal similarity," in which a "smaller fragment of a work has been copied literally, but not the overall theme or concept-in approach . . . ." *Id*. "In such situations, even a small degree of copying may support a finding of substantial similarity, depending on the context." *Id.* (citing *Murray Hill Publ'gs, Inc. v. ABC Commnc'n, Inc.*, 264 F.3d 622, 633 (6th Cir. 2001)).

11

No. 51 at p. 11 (collecting cases); *see also id.* at p. 8.) In this circuit, however, the Sixth Circuit has cautioned that granting *summary judgment* motions in copyright infringement cases, including cases involving allegedly infringing musical works, is generally disfavored, because the issue of "substantial similarity" can present a close factual question.

> In copyright infringement cases, "summary judgment, particularly in favor of a defendant, is a practice to be used sparingly" because substantial similarity is often an extremely close question of fact, but "a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity."

*Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009) (quoting *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)).

Given that *summary judgment* motions premised on a developed record – often with the benefit of expert testimony – are to be granted "sparingly," it is not surprising that the defendants have identified only one case within this circuit in which a district court has granted a Rule 12 motion involving a copyright claim – and that case is readily distinguishable. *See Pollick v. Kimberly Clark-Corp.*, 817 F. Supp. 2d 1005 (E.D. Mich. 2011).[9] Although the court accepts the proposition that it could, under appropriate circumstances, dismiss a copyright claim at the Rule 12 stage by comparing the holder's copyrighted work to an allegedly infringing work, the court's role at this stage is necessarily limited to whether Bowen can plausibly demonstrate copyright

---

[9]*Pollick* involved a suit by the holder of a copyright for "diaper jeans" against the manufacturer of Huggies "jeans diapers." At the time, "the law had been long established that Plaintiff's copyright did not confer a broad right to exclude others from producing diapers 'designed to resemble jeans' – but a narrow right to prevent others from reproducing Plaintiff's particular design of diaper jeans." *Id.* at 1013. After comparing images of the two types of jeans, the court concluded that the plaintiffs' lawsuit was "objectively unreasonable," because the two types of jeans were "not only . . . not substantially similar, they are substantially different," including differences in color, pattern, stitching, pocketing, fly, belt loops, and back label. *Id.* at 1012-13.

12

infringement, which here turns on whether Bowen has plausibly established that copyrightable elements of the Original Song are "substantially similar" enough to copyrightable elements of the Paisley/Underwood Recording so as to raise an inference of copying.

The Sixth Circuit has indicated that the use of a word or phrase repeated in a song, such as the song's chorus, can support a copyright infringement claim. For example, in *Bridgeport Music*, the plaintiffs argued that the defendants' song violated the plaintiffs' copyrighted original song recording, where the defendants' recording appropriated the term "bow wow wow, yippee yo, yippea yea," repeated the word "dog" in a low tone of voice at periodic intervals, and included the sound of rhythmic panting. 585 F.3d at 272. After a jury found for the plaintiffs, the Sixth Circuit upheld the verdict, concluding that, (1) although the individual word "dog" was not in and of itself copyrightable, the combination of the three disputed elements was sufficiently original to justify copyright protection, and (2) it was appropriate for the jury to make a finding of substantial similarity, where "the copied elements had such great qualitative importance to the song." *Id*. at 276-77; *see also Brainard v. Vassar*, 625 F. Supp. 2d 608, 620 (M.D. Tenn. 2009) (stating that, "[g]iven the central importance of the choruses to the songs' commercial viability and value, sufficient similarity here could, potentially, demonstrate substantial similarity between the songs as a whole"); *Santrayll v. Burrell*, 1996 WL 134803, at *1-*2 (S.D.N.Y. Mar. 25, 1996) (denying motion for summary judgment, because the word "uh-oh" repeated four times to a particular "distinctive" rhythm was protectible and could support a copyright infringement claim); *McKinley v. Raye*, 1998 WL 119530 (N.D. Tex. Mar. 10, 1998) (reasonable trier of fact could find "substantial similarity," where, *inter alia*, hooks contained identical lyrics, similar melodies, and specialized use within the song compared to other types of songs).

13

### III. The Creagh Recording

The parties argue at some length about the relevance of the Creagh Recording, which is a derivative recording of "Remind Me" that Bowen did not register with the copyright office. As explained in the next section, the court need not rely on the Creagh Recording, because plausibly protectable elements in the Original Song support a finding of substantial similarity without reference to the Creagh Recording.[10]

### IV. Application

#### A. The Words

With the exception of the words "remind me" and "baby, remind me," the lyrics of the songs are different. The parties appear to agree, as they must, that the words "Remind me" and "Baby, remind me" are, in and of themselves, not copyrightable. However, Bowen argues that the defendants appropriated not only the words "Remind me" and "Baby, remind me," but the manner in which Bowen utilized those words in the song "Remind Me," as well as the associated melodies and distinctive vocal intonations.

The court finds that Bowen has the better argument: Bowen has plausibly shown that, taken in combination, the lyrics and associated melodies, intonations, and usage could be

---

[10]Because the Creagh Recording is not copyrighted, it could be relevant at least (and only) to the extent that it contains essentially the *same* copyrightable elements as the Original Song, but not to the extent that it contains different elements. *See Nicholls v. Tufenkian Import/Expert*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005). Based on a comparison of the two songs, it appears to the court, at least at first blush, that the Creagh Recording and the Original Song contain substantially the same hooks, both in terms of lyrics and melody/intonation. The court also notes that the Creagh Recording, which was produced professionally in a studio, is much clearer and "cleaner" than the Original Song recording, which was merely an acoustic recording. At any rate, the court expresses no opinion at this stage concerning the ultimate potential relevance of the Creagh Recording and/or whether it can support Bowen's infringement claim.

14

sufficiently original to constitute protectable material. Therefore, the next question is whether those hooks, which incorporate that potentially distinctive combination of elements, are "substantially similar" as between the Original Demo Recording and the Paisley/Underwood Recording.

   B.   **The Hooks**

The defendants argue that, as a matter of law, the court should find that a lay listener could not reasonably conclude that the hooks are "substantially similar." The defendants argue that, in undertaking this analysis, the court should ignore the portions of the Amended Complaint that, using musicological terms, purport to identify the types of similarities between the hooks.[11]

Having listened to and compared both works, the court finds that the hooks are sufficiently similar to support a plausible claim of infringement. As Bowen points out, in both recordings, (1) the phrase "Remind me" is often followed by the partner phrase "Baby, remind

---

[11]As an initial matter, the court is not yet convinced that expert analysis is irrelevant to the issue of substantial similarity, a proposition for which the defendants cite no Sixth Circuit authority. The Sixth Circuit has indicated that expert testimony is at least relevant to the issue of "filtering," the process by which original elements of the disputed works are distilled for purposes of direct comparison. *See Bridgeport*, 585 F.3d at 275-276. In *Bridgeport*, the Sixth Circuit found that, in light of expert musicological testimony presented at trial, the district court appropriately permitted the jury to consider whether "the word 'dog' as musical punctuation [and] the rhythmic panting in 'D.O.G. in Me'" constituted original protectable elements of the infringed song, rather than non-protectable expression that should have been "filtered out." *Id.* The Sixth Circuit relied, among other things, on "expert testimony at trial that these elements were not just the 'mere abstract idea' of a dog or of the activity of panting because, in [the composition at issue], the word 'dog' constituted a stand-alone melody of one word' used as musical punctuation at intervals on the tonic note of the song and because the sound of panting followed the rhythm of the song." *Id.* at 276. This court has also relied on expert testimony in determining whether, at the Rule 56 stage, a plaintiff sufficiently established that the chorus of an allegedly infringing song was "substantially similar" to the chorus of the allegedly infringed song. *See Brainard*, 625 F. Supp. 2d at 620-621. At any rate, the court need not rule on the relevance of expert testimony to particular issues here, an issue that must be reserved for a later stage in this case.

15

Me," which essentially echoes the hook; (2) the hooks are repeated in close proximity and with similar intonation – higher the second time than the first; (3) the hooks rise in pitch from "re-" to "-mind" and descend in pitch from "re-" to "-mind,"; and (4) the syllable "re-" crosses two tones and the syllable "-me" crosses at least three tones.  Although the precise melodies accompanying these phrases do vary within each song, they plausibly could be construed as identifiable variations on an underlying theme.  The hooks also feature prominently in both works and could be considered the "catchiest" and most distinctive elements of both the Original Song and the Paisley/Underwood Recording – *i.e.*, the material having the most musical (and ultimately commercial) value in each song.

Moreover, if Bowen's access-related allegations are true, Bowen plausibly could show that the appearance and use (including melody, intonation, etc.) of the phrases "Remind me" and "Baby, remind me" in the Paisley/Underwood Recording are more than mere coincidence, and in fact reflected copying of the Original Song by composers who were already familiar with Bowen's work from the Country Music Songwriting Workshop – if not from other avenues as well.[12]

### C. Summary

The court finds that, for purposes of the Motion to Dismiss, Bowen has established a plausible claim of copyright infringement.  To be clear, in reaching that holding, the court has *not*

---

[12]Depending on the strength of her proof of access, Bowen may argue that she can establish her indirect infringement claim with a lower showing of substantial similarity than might otherwise be required.  *See Stromback*, 384 F.3d at 293.  The court expresses no opinion as to whether this case presents circumstances under which "less compelling proof" of substantial similarity will be required, as the Sixth Circuit in *Stromback* suggested might be appropriate "in some cases."  384 F.3d at 293.

16

found that, as a matter of law, the defendants necessarily infringed Bowen's work by copying protectable elements of the Original Song. The court has simply found that, based on her allegations and based on the court's comparison of the Original Demo Recording and the Paisley/Underwood Recording, Bowen has met her burden to plead a *plausible* claim of infringement, sufficient to "unlock the doors of discovery." *Iqbal*, 129 S. Ct. at 1949-50. Whether Bowen's allegations ultimately have merit (and/or whether the issue will be tried to a jury) appropriately will be resolved at a later stage in these proceedings, based on a developed factual record and, perhaps, with the benefit of expert testimony on certain issues.

## CONCLUSION

For the reasons stated herein, the defendants' Motion to Dismiss will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

17