| | | |
|---|---|---|
| **AMY ELIZABETH CONNOR BOWEN,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 3:13-cv-0414** |
| **v.** | ) ) | **Judge Aleta A. Trauger** |
| **BRAD DOUGLAS PAISLEY, *et al.*,** | ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Before the court is the Motion for Summary Judgment (Doc. No. 115) filed by defendants Brad Paisley, Kelley Lovelace, Chris DuBois, Frank Rogers, Carrie Underwood, Sea Gayle Music, LLC, EMI April Music Inc. ("EMI April"), and Sony Music Entertainment. Also pending is Defendants' Motion to Exclude the Reports and Testimony of Judith Finell (Doc. No. 113).

In their Motion to Exclude, the defendants do not challenge Finell's qualifications to be an expert. Instead, they argue that her testimony and reports are unreliable and irrelevant, asserting essentially the same points raised in support of their Motion for Summary Judgment. The court finds that Finell's testimony and reports are not inherently unreliable or irrelevant and will therefore deny the Motion to Exclude. The court has considered Finell's reports and testimony in ruling on the defendants' Motion for Summary Judgment.

Nonetheless, as discussed below, the Motion for Summary Judgment will be granted and this case dismissed.

# I.    FACTUAL AND PROCEDURAL HISTORY[1]

The plaintiff, Amy Elizabeth Connor Bowen, lives in Dallas, Texas, but she previously resided in Nashville while she pursued a country songwriting career under the name "Lizza Connor." Defendant Brad Paisley is a country songwriter and performer. Defendants Kelley Lovelace and Chris DuBois are country songwriters. Defendant Frank Rogers is a songwriter, record producer, and music publisher. He produced Paisley's 2011 album, *This Is Country Music*. Defendant Sea Gayle Music, LLC is a limited liability company engaged in music publishing, founded by Paisley, DuBois, and Rogers. Defendant Carrie Underwood is a country songwriter and performer. Defendant EMI April is a music publishing company that, during the time relevant to this lawsuit, published the musical compositions written or co-written by Lovelace. Defendant Sony Music Entertainment d/b/a Arista Nashville is the distributor of Paisley's album, *This Is Country Music*, and the separate recordings that make up the album. This lawsuit involves allegations of copyright infringement.

In the fall of 2007, the plaintiff began writing a musical composition entitled "Remind Me." She revised the song into its final form by March 2008. Several months later she submitted the revised work (the "Bowen Work") as part of a compilation registration to the United States Copyright Office ("Copyright Office"). As the deposit copy of the Bowen Work, Bowen submitted a digital copy of her original demo recording of the song, featuring only herself singing and playing guitar, along with a lyric sheet. In her copyright application, Bowen identified herself as the sole copyright holder. She obtained a copyright registration for the Bowen Work effective as of September 3, 2008. The Bowen Work was never released

[1] The facts set forth herein are undisputed for purposes of the defendants' motion, unless otherwise indicated. The facts in this section are drawn primarily from Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 125), the party and witness depositions that were submitted with the parties' motions, and the parties' experts' reports and depositions.

commercially and has never been broadcast on commercial radio or satellite radio. The Bowen Work is not available for download on iTunes or similar services. No song written by Bowen has ever been recorded by another artist, although she has written and filed copyright registrations for a few dozen songs.

The musical composition that allegedly infringes Bowen's copyright is another song titled "Remind Me" (the "Paisley Work"), written in February 2011 by defendants Brad Paisley, Kelley Lovelace, and Chris DuBois. In early 2011, Paisley was continuing to work on his soon-to-be-released album, *This Is Country Music*. Paisley wanted the album to include multiple different types of songs that all fit within the country music genre. The album was virtually complete and had a release date, but Paisley felt that the album was missing something. He knew he wanted one more song, "more than likely, a physical, sexy-type song," filled with sexual tension. (Doc. No. 117-5, Paisley Dep. 15:21–23.) Paisley remembered that DuBois's wife had said something previously about his writing "a song about kissing somebody's neck." (Paisley Dep. 22:12.)

Paisley called his friend and frequent collaborator, Kelley Lovelace, on the evening of Sunday, February 6, 2011, and asked Lovelace to join him in writing a song. Lovelace came over to Paisley's house, and the two worked for a number of hours on a potential song for the album. When the song was in place enough that Paisley felt he could share it, he went upstairs and played it for his wife. His wife did not like the proposed song, and Paisley decided not to include it on the album.

Paisley testified that he returned to Lovelace and decided to start from scratch on a song that met his intention to include a ballad full of sexual tension for the album. Paisley scanned through a list of words and phrases that Lovelace kept on his laptop computer as notes for

potential song titles and ideas, all of which Paisley had already seen before. Among the dozens of possibilities on the list was the phrase "Remind me so I won't forget." (Doc. No. 117-6, Lovelace Dep. 87:22–23; *see also* Paisley Dep. 20:5–6 ("[T]his is what I remember: 'I wish you would remind me not to forget.'").) Paisley asked Lovelace if there was a story behind the phrase, but Lovelace responded that it was simply an idea he had come up with and written down "at some point." (Lovelace Dep. 87:16–20.)

From the phrase "Remind me so I won't forget" and his earlier idea about the type of song he wanted to write, Paisley was inspired and began strumming some chords for what would eventually become the Paisley Work, which he envisioned from the beginning as a duet with defendant Carrie Underwood. Paisley and Lovelace worked on the new song late into the night. At some point, Paisley decided to bring Chris DuBois into the process to assist with writing the lyrics. DuBois joined Paisley and Lovelace late Monday evening or early Tuesday morning, February 7 or 8, 2011. By February 8, 2011, the Paisley Work was basically completed. Sometime that day, Paisley called Underwood to see if she was willing to perform on the duet he was working on. Underwood was willing and could record the vocals on Friday, February 11, 2011. The Paisley Work was recorded over the next several days and was included on Paisley's album, *This Is Country Music*.

The Paisley Work was written to be a duet between a man and a woman, and specifically for Paisley's and Underwood's vocal ranges. Paisley testified that, although he was inspired by Lovelace's list of possible titles, he alone came up with the underlying idea behind the song. (*See* Paisley Dep. 28:21–23 ("[I]n this case, we're talking about something where I – I had a firm idea of what I was doing.").) Paisley selected the phrase "remind me" and chose that to be the title of the composition. Paisley, Lovelace, and DuBois testified that they all contributed to the lyrics but

that Paisley had control of the final product. Paisley testified that he alone wrote the melody for the Paisley Work. (*See* Paisley Dep. 30:8–10 ("And in this case, in this song in particular, they contributed nothing to this melody. Nothing. It's all me.") Paisley, Lovelace, and DuBois all testified that, when they write songs together, Paisley always writes the music while Lovelace and DuBois contribute to the lyrics. (*See* Paisley Dep. 29:22-23 ("I always write the music when I write with someone like Kelley [Lovelace] or someone like Chris DuBois"); Lovelace Dep. 249:21-24 (responding that he "never" composes music when he writes songs with Paisley); Doc. No. 117-3, DuBois Dep. 28:21 ("I am not a singer and not a player. . . ."); *id.* at 29:3–6 (agreeing that it was "fair to say" he "contribute[d] more on the lyrical side than the musical side" when composing with Paisley).)

Bowen, in her response to the Defendants' Statement of Undisputed Facts, denies the defendants' assertion that Paisley wrote all of the melody for the Paisley Work. She states only: "Denied, as one of Plaintiff's contentions is that she contributed to the melody." (Pl.'s Resp. to Defs.' Statement of Undisp. Facts ¶ 24.) Bowen does not cite to any evidence in the record in support of this assertion, but she insists that the words and melodies of the two Works are substantially similar, that such similarity cannot be a mere coincidence, and that the defendants had sufficient access to her song to permit copying, even if unintentional.

Specifically, between February and May 2008, Bowen participated in a Country Music Songwriting Workshop (the "Workshop"). The Workshop met on a weekly basis for several months and included guest speakers recruited by the organizer, Mike Doyle. In 2008, defendants Kelley Lovelace and Chris DuBois both participated as speakers at separate sessions of the Workshop. Bowen testified that she sang her Work at one Workshop session, on March 3, 2008, at which Lovelace was the guest speaker. In the course of that Workshop session, Bowen sang

the song for Lovelace and he offered critiques of her song. As far as Bowen knows, Lovelace did not have access to her song at any other time. She did not give Lovelace a recording of the Bowen Work. She never played the Bowen Work for Chris DuBois at the Workshop or any other time. Lovelace does not recall having heard the Bowen Work before Bowen filed this lawsuit, and he does not remember meeting the plaintiff during the Workshop. For purposes of the defendants' Motion for Summary Judgment, however, Lovelace does not dispute that he might have heard Bowen sing the Bowen Work one time in early March 2008 at the Workshop.

Bowen also alleges that she played the song in multiple public performances at bars or clubs around Nashville and in some private "house concerts" from 2008 into 2011. (Doc. No. 39, Am. Compl. ¶ 32.) In addition, toward the end of 2008, she obtained a single-song publishing deal for "Remind Me" with Rod Creagh doing business as 3 Wire Music ("3 Wire"). 3 Wire paid for the production of a professional demo recording of the song and employed song plugger Sherrill Blackman to pitch the Bowen Work to various music labels, publishers, and artists around Nashville over the next ten months, through September 2009, when Bowen terminated her relationship with 3 Wire. (Am. Comp. ¶¶ 33–34.) Bowen also alleges that, in September 2009, she met with Bobby Rymer, head of publishing for Montage Publishing ("Montage") and played the Bowen Work for him. Rymer liked the song and represented to Bowen that he would play the Bowen Work to other music industry executives. Laura Wright Alexander was an assistant song plugger for Montage at that time. Alexander later left Montage to go work for EMI Music Publishing, which is now defendant EMI April, Kelley Lovelace's publisher. (Am. Compl. ¶¶ 35–37.) In her Amended Complaint, Bowen asserts that all of these avenues granted the defendants access to hear, or a reasonable opportunity to hear, the Bowen Work.

In her deposition, however, Bowen admits that, excluding the Workshop referenced

above, she has no personal knowledge or information from a third party that Paisley, Lovelace, or DuBois attended any public or private performance at which she played the Bowen Work. (Doc. No. 117-1, Bowen Dep. Vol. I ("Bowen Dep. I"), at 180:23–182:9.) In addition, Bowen has no personal knowledge or information from a third party establishing that Creagh, Blackman, Rymer, Alexander, or any publisher pitched the Bowen Work to anyone, played the Bowen Work for any defendant, or played the Bowen Work or gave it to any person who had a connection with any defendant. (Bowen Dep. I, at 177:23–179:11, 182:25–185:6.) Further, Laura Alexander testified that she did not recall meeting Bowen until the day of her deposition. (Doc. No. 124-2, Alexander Dep. 32:25–33:14.) She also affirmatively testified that she had not heard Bowen's work or pitched it to anyone. (Alexander Dep. 34:8–21, 35:9–12.) Finally, while Bowen points to an email exchange between Alexander and a third party, to which was attached a recording of Bowen's Work, as providing "perhaps the most compelling point of access between Alexander and the Bowen Work" (Doc. No. 121, at 18), she fails to acknowledge that this communication took place in October 2011, well after both the creation and public release of the Paisley Work. The email exchange therefore could not establish access for purposes of copyright infringement. (*See* Doc. No. 132-1, at 12, Alexander Dep. Ex. 2.)

Bowen agrees that the Paisley Work "is about a passionate physical experience," is "a conversation between a man and a woman," and is a "call and response." (Bowen Dep. I, at 191:2–20.) Bowen describes her song, "Remind Me," as written in the voice of a woman telling a story from her point of view, and it is written in the first person. Bowen testified that her song is "sentimental and sad," as the singer is grieving the loss of a relationship. (Bowen Dep. I, at 93:20–21.) She agrees that the song is not a conversation between two people, is "not two people singing back and forth to each other," and is "not a call and response." ( Bowen Dep. I, at 94:1–

9.) Bowen testified that her composition could be sung in harmony with a man but that it has never been sung as a duet.

A side-by-side comparison of the lyrics of the Bowen Work and the Paisley Work is attached as an exhibit to the deposition of the plaintiff's expert, Judith Finell, and attached as an exhibit to the defendants' Memorandum in Support of Summary Judgment. (Doc. Nos. 113-7, 116-1.) That exhibit is reproduced here:[2]

| "Remind Me"<br> By Lizza Bowen Conner [sic] | "Remind Me"<br> By Paisley, Lovelace, & DuBois |
|---|---|
| (Verse 1)<br><br>Found a picture in a shoebox under my bed<br>A lil' worn around the edges<br>All the years I've kept it<br><br>It's you and me on the back porch<br>Drinking cheap wine<br>Stomach full of butterflies<br>Both of us with big smiles<br>That's when I knew I loved you for the first time<br><br>(Chorus)<br>All it takes is one kiss to remind me<br>All I need is your touch to remind me<br>Yesterday's gone<br>Take me to the place we started from<br>When love was young<br>Baby, remind me<br><br>(Verse 2)<br>You've always been my happy ending<br>That's what the card said<br>On the roses you sent<br><br>So it's just me on the front porch<br>Drinking champagne | (Verse 1 at 0:28)<br><br>[Brad] We didn't care if people stared<br>We'd make out in a crowd somewhere<br>Somebody'd tell us to get a room<br>It's hard to believe that was me and you<br>Now we keep saying that we're okay<br>But I don't want to settle for good not great<br>I miss the way that it felt back then I wanna feel that way again<br><br>(Chorus 1 at 0:55)<br>[Brad] Been so long that you'd forget<br>The way I used to kiss your neck<br>[Carrie] Remind me, remind me<br>[Brad] So on fire so in love<br>Way back when we couldn't get enough<br>[Carrie] Remind me, remind me<br><br>(Verse 2 at 1:22)<br>[Carrie] Remember the airport dropping me off<br>We were kissing goodbye and we couldn't stop<br>[Brad] I felt bad cause you missed your flight<br>[Carrie and Brad] But that meant we had one more night<br><br>(Chorus 2 at 1:36)<br>[Carrie] Do you remember how it used to be |

[2] To the court's ears, the transcript of the plaintiff's song contains minor inaccuracies, but they are not material to the matters decided herein.

| | |
|---|---|
| Maybe next year we'll celebrate<br>When you don't have to work late<br>What I'd give for cheap wine and you by my side<br><br>(Chorus)<br>All it takes is one kiss to remind me<br>All I need is your touch to remind me<br>I don't think we're too far gone<br>To get back to the place where we started from<br>When love was young<br>Baby, remind me<br><br>Nobody said love would be easy<br>And there's only one way back to who we used to be<br><br>Remind me<br>Baby remind me<br>I'm still holding on<br>Take me to the place where we started from<br>When love was young<br>Baby, remind me<br>(Time 3:12) | We'd turn out the lights and we didn't just sleep<br>[Brad] Remind me, baby remind me<br>[Carrie] Oh so on fire so in love<br>That look in your eyes that I miss so much<br>[Brad] Remind me, baby remind me<br><br>(Bridge at 2:03)<br>[Brad] I wanna feel that way<br>[Carrie] Yeah, I wanna hold you close<br>[Brad and Carrie] Oh if you still love me<br>Don't just assume I know<br><br>(Guitar Solo at 2:17)<br><br>[Carrie] Oh baby remind me, remind me<br>Yeah<br><br>(Chorus 3 at 2:44)<br>[Carrie] Oh do you remember the way it felt?<br>[Brad] You mean back when we couldn't control ourselves<br>[Carrie] Remind me<br>[Brad] Yeah remind me<br>[Carrie] All those things that you used to do<br>That made me fall in love with you<br>Remind me, oh baby remind me<br>[Brad] Yeah, you'd wake up in my old t-shirt<br>All those mornings I was late for work<br>Remind me, baby remind me<br>[Carrie (dovetailed over Brad)] Oh baby remind me yeah<br><br>(Outro at 3:25)<br>[Carrie] Oh oh baby remind me, baby remind me yeah<br>[Brad] Yeah you'd wake up in my old t-shirt<br>Baby remind me<br>(Time 4:07) |

At least two audio recordings of the Bowen Work and the Paisley Work have been manually filed (Doc. Nos. 38, 46), and the court has listened to the recordings.

As is clear from the comparison above, the phrase "remind me" is found in the chorus

sections of the Bowen Work and the Paisley Work, as well as in the bridge of the Bowen Work and during the guitar solo and "outro" (or ending) sections of the Paisley Work. The verse sections in neither song include the title lyrics "remind me," nor does the bridge in the Paisley Work. The phrase "remind me" appears a total of nine times in the Bowen Work: four times as "to remind me," four times as "baby, remind me," and one time as "remind me." The phrase "baby, remind me" follows the phrase "remind me" directly only once. In the Paisley Work, there are twenty total iterations of the phrase "remind me": ten as "remind me," four as "baby remind me," two as "oh baby remind me," one as "yeah remind me," one as "oh baby remind me yeah," one as "oh oh baby remind me," and one as "baby remind me yeah." The phrase "remind me" or "baby remind me," or some variation thereof, is repeated twice every time it is used in the Paisley Work, except in the final outro iteration.

Bowen testified in her deposition that she had heard the phrase "remind me" before she wrote her Work and that she did not coin the phrase. ( Bowen Dep. I, at124:8–12.) Bowen testified that, when she writes songs, the phrase or words that make up the title typically appear in the chorus and that she repeats the title in the chorus. Bowen acknowledged that this is common practice for country music. Bowen concedes now that there are hundreds of other songs with the title "Remind Me" or that have "remind me" in the title that were written before her song, although she was not aware of them when she wrote her song. Bowen testified that the structure of the Bowen Work is similar to that of many other country songs with a chorus, verses, and bridge.

The plaintiff's expert musicologist, Judith Finell, identifies the fundamental elements of a musical composition as melodies, lyrics, structure and harmony. (Doc. No. 113-2, Oct. 29, 2015 Finell Dep. ("Finell Dep. I"), at 62:20-63:7.) Finell testified that there is no "universally

understood definition recognized in the musicological literature for substantial similarity." (Finell Dep. I 65:24-66:4). Finell agreed that it is commonplace in country songs for the title lyrics to be set to music and repeated in the chorus.

In her report, Finell focuses entirely on the phrases "remind me" and "baby, remind me" as they are both found in the two Works, based on her conclusion, as discussed in greater detail below, that the salient similarities between the two Works are limited to their expression of the phrase "remind me," which she identifies as the "hook" in both Works. (*See* Doc. No. 113-1, Finell Full Report ("Finell Report") at 2–3, ¶¶ 5–11; Finell Dep. I at 26:13–16 ("Q. So your focus has been on the combination of music with the words "remind me," correct? A. Absolutely.").) Finell testified that, in her opinion, the Bowen Work and the Paisley Work are "substantially similar musical works in their core musical features." (Finell Report at 25, ¶ 44.) The musical features she identifies as similar consist primarily of the fact that both songs use the "hook" phrase, "remind me"; both songs repeat the hook numerous times within each song; both songs employ the technique of repeating the phrase twice in close proximity to each other and in close proximity to what she calls the "partner phrase," "baby, remind me"; both songs employ the technique of constantly changing the melody to which their "hooks" are set; and the two compositions share a number of "similar features in their melodic designs, such as distinctive melodic leaps with identical lyrics, and *appoggiaturas*."[3] (Finell Report at 3, ¶ 9.)

---

[3] Finell defines the term "*appoggiatura*" in her Report:

[A] compositional feature in which the melody deliberately deviates from the prevailing harmony, causing a dissonance, or clash. The clashing *appoggiatura* note occurs on the stronger part of the beat, and is rhythmically stressed by this positioning. The discordant melody then resolves by moving to a consonant note, blending with the supporting harmony, on the weaker part of the beat.

(Finell Report at 3 n.5.)

Finell acknowledges, however, that the melodies[4] set to the "remind me" lyrics in the Bowen Work are not the same as the melodies set to the "remind me" lyrics in the Paisley Work. (Doc. No. 113-9, March 15, 2016 Dep. of Judith Finell ("Finell Dep. II") 57:21–35.) She did not compare the melodic phrases between what she characterizes as the shared "hooks." She states that she did not do so "[b]ecause they're not even the same within each song." (Finell Dep. II 24:16–22.) She acknowledges that the pitch sequences are different between the two Works. She characterizes the pitch sequences as "irrelevant" because they are different and not similar. (Finell Dep. II 27:19–28:3). She did not analyze rhythm and harmony, because she did not find these features to be relevant to the similarities between the two Works. She did not find any significant similarities in the chord progressions in the two Works. (*See* Finell Dep. I, at 92:2–13 (stating, "If the similarity in the music isn't directly related to the chords, th[en] I won't focus on that," and acknowledging that she did not map out the chord progressions or analyze them in depth in this case).)

The defendants' expert musicologist, Dr. Lawrence Ferrara, analyzed the structural, harmonic, rhythmic, melodic and lyrical features in the Bowen Work and the Paisley Work. According to Ferrara, the two Works do not "share any significant structural, harmonic, rhythmic, melodic, or lyrical similarities, individually or in the aggregate." (Doc. No. 118-1, Ferrara Report at 2, ¶ 3.) He finds the similarities to which Finell refers to be insignificant in light of the structural, harmonic, rhythmic, melodic, and lyrical dissimilarities.

The plaintiff filed her original Complaint in this action alleging that the defendants had violated her copyright interests in the Bowen Work and seeking a declaratory judgment and accounting. She later filed an Amended Complaint asserting a single claim of copyright

---

[4] The parties define "melody" as "a linear succession of pitches." U. S. Copyright Office Compendium of Practices § 802.3(A).

infringement. The case proceeded to discovery after the court denied the defendants' Motion to Dismiss the Amended Complaint. The defendants have now filed their Motion for Summary Judgment. The motion has been fully briefed.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## III.     ANALYSIS

The defendants argue that they are entitled to summary judgment on Bowen's copyright

infringement claim because (1) the plaintiff cannot establish originality, an essential element of her copyright claim; (2) the plaintiff cannot establish copying, another essential element of the claim, because (a) she cannot show that the defendants who composed the Paisley Work had access to her Work and (b) she cannot show that the two Works are substantially similar. The plaintiff opposes the motion, asserting that material factual disputes preclude summary judgment. As set forth below, the court finds that the plaintiff has sufficiently established originality and access, but she has not presented sufficient evidence of substantial similarity between the two Works to survive summary judgment.

### A.     Copyright Infringement

The Copyright Act provides protection for original works of authorship expressed in various media. 17 U.S.C. §§ 101–1332. Generally, the owner of a copyright has the exclusive rights to (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies; (4) perform publicly a copyrighted work; and (5) display publicly a copyrighted work. 17 U.S.C. § 106. A plaintiff may bring a claim against a person who infringes any of the plaintiff's exclusive rights in a copyright under § 106 by demonstrating "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009) ("There are two essential questions at the heart of any copyright infringement action: whether the plaintiff owned the copyrighted work and whether the defendant copied it. The federal constitution requires, moreover, that to be actionable the copying must be of elements of the copyrighted work that are 'original.'" (citing *Feist*, 499 U.S. at 361)). The defendants here do not dispute that the plaintiff holds a registered copyright for her Work, "Remind Me." At issue is whether defendants infringed the plaintiff's

copyright interests by copying original elements of her Work.

To establish copying, where, as here, there is no direct evidence of copying, a plaintiff may establish "an inference" of copying by showing (1) that the defendant had "access" to the allegedly infringed work and (2) that there is a substantial similarity between the two works at issue. *Jones v. Blige*, 558 F.3d 485, 490–91 (6th Cir. 2009).

### 1.    *Access*

Access occurs when the defendant either hears or has "a reasonable opportunity to hear the plaintiff['s] work and thus ha[s] the opportunity to copy." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999) (citations omitted). "[A]ccess may not be inferred through mere speculation or conjecture," but "evidence that a third party with whom both the plaintiff and defendant were concurrently dealing had possession of plaintiff's work is sufficient to establish access by the defendant." *Id.* (citation omitted). In that situation, the plaintiff must, at a minimum, "introduce some evidence that it was 'reasonably possible that the paths of the infringer and the infringed work crossed.'" *Jones*, 558 F.3d at 493 (quoting *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996)).

In the Amended Complaint, Bowen alleges three potential avenues of "access" to her Work: (1) her playing the song for Kelley Lovelace in March 2008 during the songwriting Workshop; (2) her performing the song at various venues around Nashville from 2008 through 2011; and (3) her having provided a recording of the Work to various music industry professionals who might have given the Work to, or played it for, Lovelace, DuBois, or Paisley. In their Motion for Summary Judgment, the defendants argue that the plaintiff's theory of access, post-discovery, collapses, because the evidence is undisputed that Lovelace did not write the melody for the Paisley Work, and there is no evidence that any other defendant ever heard the

melody in any other context. Bowen responds that her having played the song for Lovelace at the Workshop is sufficient to establish a genuine dispute of material fact as to access for purposes of summary judgment. She also asserts that the other defendants had an "opportunity for exposure" to the Bowen Work through Bowen's live performances, vague "efforts" by Bobby Rymer and Montage Music Publishing to "plug" the Bowen Work around Nashville, and exposure of the Work to a third-party intermediary, Laura Alexander, who later worked at EMI April, where she met and worked with Lovelace.

For purposes of their Motion for Summary Judgment, the defendants do not dispute that Bowen played her Work for Kelley Lovelace in 2008. Accordingly, Lovelace had direct access to the Bowen Work—he heard the song and, in theory at least, could have conveyed the title lyrics and the melody to the other defendants. The defendants point to evidence in the record that tends to refute whether Lovelace's access actually led to copying, including that (1) Lovelace only heard the song once and did not have physical possession of a recording of, or sheet music for, the song; (2) approximately three years passed between the time he heard Bowen play the Bowen Work on one occasion and the date he and Brad Paisley sat down to compose the Paisley Work; and (3) Paisley, Lovelace, and DuBois all testified that Paisley alone composed the melody to the Paisley Work. This evidence might ultimately lead a factfinder to conclude that no copying occurred, despite Lovelace's access, but they do not refute Lovelace's access to the song. For purposes of the Motion for Summary Judgment, the plaintiff has adequately raised a disputed issue of fact as to access.

### 2. *Substantial Similarity*

The Sixth Circuit has developed a two-part test for gauging "substantial similarity," the first step of which requires the court to "identify[] which aspects of the artist's work, if any, are

protect[a]ble by copyright." *Bridgeport Music*, 585 F.3d at 274 (quoting *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)). Only those aspects that are "original" are protectable. *Id.* Once the court parses or "filters out" those aspects that are not protectable, *see Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318 (6th Cir. 2004), the second step of the inquiry requires the court to "determin[e] whether the allegedly infringing work is substantially similar to the protect[a]ble elements of the artist's work." *Bridgeport Music*, 585 F.3d at 274 (quoting *Kohus*, 328 F.3d at 855).

### a. Originality

Ideas, of course, even if "original," are not protected by copyright. Instead, copyright protects "the expression of ideas." *Murray Hill*, 361 F.3d at 318. Thus, "[t]he real task in a copyright infringement action . . . is to determine whether there has been copying of the expression of an idea rather than just the idea itself." *Id.* at 318–19 (citation omitted). Consequently, so-called "scènes à faire," defined as "those elements that follow naturally from the work's theme, rather than from the author's creativity," are not protectable and should be "filtered out." *Id.* at 319. However, as the Supreme Court has recognized, the standard for originality is very low and generally poses no barrier to a copyright infringement claim:

> Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be.

*Feist*, 499 U.S. at 361. In other words, to be original, an element must be both an independent creation of its author and involve at least minimal creativity. *Bridgestone Music*, 585 F.3d at 274.

The defendants argue that the plaintiff cannot establish that the allegedly infringed portions of the Bowen Work are original and therefore protectable under the Copyright Act. The

defendants assert that the plaintiff has the burden of proof on this issue but has offered no proof other than "conjecture and conclusion" to establish that the fragments of the Bowen Work that are the subject of her lawsuit are actually original.

For purposes of this suit, the court has previously found—and the plaintiff concedes—that the lyrics of the two Works are different, except for the two phrases "remind me" and "baby remind me." These short portions of the lyrics, standing alone, are not entitled to copyright protection. *See, e.g.*, *Pendleton v. Acuff-Rose Publ'g, Inc.*, 605 F. Supp. 477, 486 (M.D. Tenn. 1984) ("Courts have consistently held that common words and clichéd language are not subject to copyright protection."); *see id.* (holding that short phrases, slogans and titles are also not subject to copyright protection). And, in fact, the defendants have offered substantial evidence that hundreds of songs titled "Remind Me" or that have "remind me" in the title lyrics, or both, have been registered with the Copyright Office or with the performing rights organizations, ASCAP, BMI, and SESAC.

The defendants further posit that the plaintiff's expression of those phrases, through setting them to music, is not protectable. The defendants point to the testimony of the plaintiff's expert, Judith Finell, who testified that she did not do a search of prior art for purposes of establishing originality or make an effort to "filter out" unoriginal elements. Instead, she simply considered the phrases "remind me" and "baby, remind me" and attempted to draw comparisons between the two Works regarding the music accompanying those phrases. The defendants also point to the testimony of Bowen herself, who stated that she did not know whether the music to which she set the phrases "remind me" and "baby, remind me" is unique. (Bowen Dep. I, at 243:4–15.)

Bowen concedes that she bears the initial burden of setting forth proof of the originality

of her Work. She points out that she has carried that initial burden by establishing a valid copyright, which gives rise to a rebuttable presumption of originality. *See* 17 U.S.C. § 401(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright."); *Jedson Eng'g, Inc. v. Spirit Constr. Servs. Inc.*, 720 F. Supp. 2d 904, 914 (S.D. Ohio 2010) ("Because originality of the author is a necessary condition to validation of the copyright, it follows that a certificate of registration, properly obtained within the five-year period, constitutes prima facie evidence of the author's originality." (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (hereafter, "Nimmer") § 12.11[B][1])). Once a copyright registration is established, the burden shifts to the defendant to prove lack of originality. *Jedson Eng'g*, 720 F. Supp. 2d at 914.

The defendants attempt to shoulder that burden by pointing to the assessment of their expert, Dr. Lawrence Ferrara, who conducted an analysis of prior art, purportedly performed the "filtering" test required by the Sixth Circuit, and concluded that the phrases upon which the plaintiff bases her claims are not original. According to the defendants,

> Dr. Ferrara found numerous works demonstrating that the musical 'similarities' identified by Ms. Finell between the [Bowen] Work and the Paisley Work . . . were already in use and embodied in (1) songs with 'Remind Me' in their titles and (2) songs written or co-written and recorded by Brad Paisley, prior to 2008....

> [A]s the Court recognized, . . . "the words 'Remind me' and 'Baby, remind me' are, in and of themselves, not copyrightable." In addition, Plaintiff's own musicologist has conceded that the varying melodies set to the "remind me" lyrics in Connor are not the same varying melodies set to the "remind me" lyrics in Paisley. Moreover, as testified by Defendants' expert musicologist Dr. Ferrara, the up-down; down-up intonations are not original to Connor but appear in many prior works. Usage, standing now alone, is neither protectable nor similar, as demonstrated by the numerous combinations of "remind," "me" and "baby" that appear in the two works at issue, once again demonstrated by Dr. Ferrara.

(Doc. No. 116, at 8–9 (internal citations to the record omitted).) Because the plaintiff offers no

testimony to rebut that of Ferrara regarding originality, the defendants insist that the plaintiff has failed to establish originality, a necessary element of her claim.

The court is not persuaded by the defendants' argument and notes that, by focusing only on the lyrics "remind me" and their expression, Finell essentially performed the "filtering out" process required by the Sixth Circuit. The plaintiff is not attempting to assert copyright protection for the idea of a lonely woman lamenting a lost relationship or for any other aspects of the song beyond the musical expression of the phrases "remind me" and "baby, remind me." In addition, Ferrara did not actually address the element of originality. Rather, he was asked to consider whether there are significant similarities between the Bowen Work and the Paisley Work and "whether or not any similarities between [the Bowen Work and the Paisley Work] were in use prior to 2008, the year in which [the Bowen Work] was submitted to the U.S. Copyright Office." (Ferrara Report at 1, ¶ 2.) He concludes that any similarities between the Works were in use prior to 2008. This is not the same as a finding that the Bowen Work, and in particular her expression of the phrases "remind me" and "baby, remind me," were not original for purposes of copyright protection. Ferrara does not report that he found any prior usage of the phrase "remind me" or "baby, remind me" using precisely the same melodies, harmonies, rhythm, mood, and context as those embodied in the Bowen Work. The defendants have presented no evidence to rebut the plaintiff's assertion that she independently created her Work. Copyright, again, protects the *expression* of an idea. The defendants have merely shown that some elements of the plaintiff's expression ("a *basic* up-down overall melodic contour in the melodic phrases that include the 'remind me' lyrics"; the use of a "melisma";[5] setting "-mind" (in "remind") at the highest pitch in the phrase "remind me," etc. (*see id.* at 31, ¶ 80 (listing

_____

[5] Finell defines "melisma" as "a vocal technique in which one word or syllable is sung over multiple pitches." (Finell Dep. I, at 97:10–12.)

melodic similarities between the Works)) were used prior to the creation of the Bowen Work. They have not shown that Bowen's particular use and integration of these features in her expression of the "hook" in her song is unoriginal. (*Id.* at 33–35, ¶¶ 83–86.)

As set forth above, the threshold for establishing originality is very low. The court finds that the defendants have not established as a matter of undisputed fact that the Bowen Work as a whole, or her expression of the phrase "remind me" therein, is unoriginal and therefore unprotectable.

It seems, however, that the question the defendants are actually raising is whether the particular musical features upon which the plaintiff's claims of copyright infringement are based are themselves subject to copyright protection. The court addresses that question in the context of the discussion of substantial similarity below.

> b.    *Substantial Similarity*

The Court of Appeals for the Sixth Circuit has stated that, in copyright infringement cases, "granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly," because such cases typically involve very close questions of fact. *Jones v. Blige*, 558 F.3d 485, 490 6th Cir. 2009). Nonetheless, the appellate court has also acknowledged that a court confronted with a motion for summary judgment may "compare the two works and render a judgment for the defendant" if, as a matter of law, the "trier of fact would not be permitted to find substantial similarity." *Id.* (quoting *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)).

The Sixth Circuit has held that the substantial similarity question in most cases is fact-bound, as it requires resolution of the question of "whether a lay observer would consider the works *as a whole* substantially similar to one another." *Murray Hill*, 361 F.3d at 320 (citation omitted) (emphasis added). The Sixth Circuit has modified this approach, however, in "situations

in which a smaller fragment of a work has been copied literally, but not the overall theme or concept—an approach referred to in the literature as 'fragmented literal similarity.'" *Bridgeport Music*, 585 F.3d at 275 (quoting Nimmer § 13.03[A][2]). In such situations, "even a small degree of copying may support a finding of substantial similarity, depending on the context." *Id.* For the copying of a small fragment of a work to constitute copyright infringement, that fragment must be "qualitatively important":

> The misappropriation of even a small portion of a copyrighted work . . . may constitute an infringement under certain circumstances. Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity. No plagiarist can excuse the wrong by showing how much of his work he did not pirate.

*Murray Hill*, 361 F.3d at 320 (internal quotation marks and citations omitted). "[W]hen a single line of a larger copyrighted work is appropriated by an alleged infringer, the test is whether the work is recognizable by an ordinary observer as having been taken from the copyrighted source." *Id.* (internal quotation marks and citations omitted).

In comparing the two musical works at issue here for similarity, the court finds it helpful to begin with reference to the Compendium of U. S. Copyright Office Practices (Third Edition) § 802.3, which states: "The main elements of copyrightable musical work authorship include melody, rhythm, harmony, and lyrics, if any." However, other aspects of two musical works, including structure, mood or tone, and any other distinctive feature may also contribute to a finding of substantial similarity. *Cf. Bridgeport Music*, 585 F.3d at 273, 276–77 (holding that the jury was not unreasonable in finding substantial similarity and thus copyright infringement based on the literal copying of specific elements of the copyrighted work that were "unique to the song" and to the refrain in particular—including "the use of the word 'dog' in a low voice as 'musical punctuation,' the rhythmic panting, and the Bow Wow refrain").

The plaintiff, in this case, does not argue that there are any substantial similarities between the two Works with regard to overall melody, rhythm, harmony and chord progressions, or lyrics, or that the Works as a whole are substantially similar. Through her expert, the plaintiff argues that the substantial similarity between the two songs boils down to similarities in what the plaintiff refers to as the "hooks" of both songs—the repetition of the phrase "remind me," sometimes partnered with "baby," as in "baby, remind me." The plaintiff defines the term "hook" as "the term used in popular and commercial music for the signature melodic material of the work, by which the song is recognized. . . . [T]he hook is usually the phrase in the chorus in which the title lyrics are sung. . . ." (Finell Report at 2 n.1.) Finell claims that the two Works are substantially similar in their "hooks" in the following ways:

(1) In both Works, "the hooks are defined by their lyrics alone." (*Id.* at 2, ¶ 6.) Finell explains that she means by this statement that, although the hook lyrics ("remind me") are repeated throughout the songs, the repetition is "always with varying melodies." (*Id.*) Specifically, in the Bowen Work, the phrase "remind me" is iterated nine times to five different melodies. In the Paisley Work, the phrase is iterated nineteen times,[6] to sixteen different melodies. (*Id.* at 5, ¶ 18.) Finell does not claim that the melodies themselves are similar. Rather, she claims that the fact that they constantly vary in both songs is an "unusual . . . shared compositional trait. . . . The decision to disrupt the ordinary equal balance of lyrics and melody represents a creative choice – and an unusual one – shared by the composers" of the two Works. ((Finell Report at 2, ¶ 6.)

(2) The shared lyric, "remind me," recurs more often than is "usually" the case in

_____

[6] Finell found the "hook" to be repeated nineteen times in the Paisley Work based on the audio recording, while Ferrara found twenty iterations, distinguishing an iteration by Underwood sung at the same time as an iteration by Paisley but to a different melody. (*See* Ferrara Report at 12 n.14.)

popular songs (nine times in the Bowen Work; nineteen times in the Paisley Work), resulting in a "higher proportion of similar material" between the two Works than "is often the case when hooks are the most similar feature in compared musical compositions." (*Id.* at 2, ¶ 7.)

(3) Both songs use the hook, "remind me," and the "partner phrase," "baby, remind me," in close proximity to the hook. According to Finell, the decision to use an identical "partner phrase" represents a "shared creative choice by the composers of both works, and contributes to their substantial similarity." (*Id.* at 3, ¶ 8.)

(4) Finell also finds a similarity in what she calls "Phrase Sets":

> In addition to the linking of the hook "remind me" with its partner phrase "Baby, remind me" . . . , both works also use the same compositional technique of combining two similar lyrical phrases in each chorus. These pairs of similar phrases will be referred to below as "Phrase Sets." In both songs, the two phrases in each Phrase Set occur consecutively.

(*Id.* at 6, ¶ 21.) That is, as the court understands it, in the Bowen Work, the phrase "remind me" appearing at the end of each of the first two lines of the chorus constitutes a "Phrase Set," and the repetition of "Remind me, remind me" (sometimes "Remind me, baby remind me" or other variations) that occurs at the third and sixth lines of the chorus in the Paisley Work constitutes a Phrase Set.

(5) While Finell does not find the melodies or chord progressions underlying the "hooks" in the two songs to be substantially similar, she finds that in both songs the "hooks" contain "similar features in melodic designs" (*id.* at 3, ¶ 9) including the following:

> (a) The lyric "remind me" always occupies two bars, beginning in the final beat of one bar and continuing into the second bar, in both songs. (*Id.* at 9, ¶ 24(a).)

> (b) In the lyric, "remind me," the "-mind" or "remind" "always features the highest tone of the phrase in both songs. (*Id.*)

> (c) In both songs there are "distinctive melodic leaps with identical lyrics," meaning that there is a melodic leap downward from the lyric syllable "-mind" to

the lyric "me" by a descending minor third interval. This happens twice in the nine iterations of "remind me" in the Bowen Work and it "permeates" the Paisley Work. (*Id.* at 9, ¶ 24(b) and at 10 ("Musical Example C").)

(d) In the Bowen Work, the phrase "remind me" "contains a distinctive *appoggiatura* feature in most of its hook variations" and this feature is also found in the Paisley Work's iteration of "remind me." (*Id.* at ¶ 24(c).) Finell explains that the use of the *appoggiatura* "creates a rhythmically stressed tonal 'clash' on a dissonant tone, followed by a resolution on a consonant tone." (*Id.* at 11, ¶ 24(d) and 12–13 ("Musical Example E").)

(e) Both songs vary their melodies in similar ways. "For example, where both songs link two iterations of the hook "remind me" in Phrase Sets, the syllable "-mind" is raised one tone higher (a major second interval) in the second iteration of the Phrase Set." (*Id.* at 13, ¶ 25.)

(6) These "shared distinctive elements" in combination, "particularly the hook, partner phrase, and similar melodic features," make the two Works substantially similar. (*Id.* at 3, ¶ 11.)

The court finds that these purportedly distinctive similarities essentially fall apart upon closer inspection. In the first two points identified above, Finell claims that the two Works are similar in that the "hook" phrase is repeated frequently and the melodies underlying the phrase "remind me" change frequently, and that these are "unusual" features. Finell does not present any actual support for that opinion, however, and concedes that she did not conduct a review of any prior works entitled "Remind Me" or that incorporate "remind me" in the title. The defendants' expert, on the other hand, examined other songs titled "Remind Me" written before the plaintiff's. He identified eighteen songs released prior to 2008 either entitled "Remind Me" or that include "remind me" in the title, fifteen of which incorporate more iterations of "remind me" than the Bowen Work does (ranging from ten to forty-one repetitions of "remind me"). (*See* Ferrara Report at 42–44, ¶¶ 106–08.) Of those fifteen songs, at least five set the repetition of "remind me" to varying melodies. (*See id.* at 43, ¶ 106 (citing Mary J. Blige's "You Remind Me" (1992) as having twenty-six iterations of "remind me" set to fourteen different melodies; Darrell

- 25 -

Dodge's "You Forgot to Remind Me" (2002) as having fourteen iterations of "remind me" set to eight different melodies; Snag's "Remind Me" (2004) as having seventeen iterations of "remind me" set to nine different melodies; and Justin Tracy's "Remind Me" (2004) as having eighteen iterations of "remind me" set to nine different melodies).) In other words, it is apparent from the record that these two features—repetition of "remind me" and varying the melodies to which the title lyrics are set—are not particularly "unusual."

More to the point, the court has already determined that the lyric phrase, "remind me," is not copyrightable. The fact that the plaintiff repeats the phrase nine times is not sufficiently distinctive for that to be a copyrightable feature. Moreover, the fact that the two Works share the feature of changing the melodies beneath the lyric is not a copyrightable feature either, in light of the fact that none of the underlying melodies in the Paisley Work is the same as any of the melodies in the Bowen Work. This element of "similarity" is actually an idea—the idea of constantly varying the melody of the "hook"—rather than a melodic feature that would be subject to copyright protection. And even if it were, no lay listener would recognize this element of variation as a similarity.

Finell's third and fourth points of similarity concern the use of "Phrase Sets"—the phrase "remind me" repeated twice in close proximity—and the use of a "Partner Phrase," "baby, remind me," also in close proximity to the Phrase Set. These features, however, are not sufficiently distinctive, and the purported similarities not striking enough, that a lay listener would identify them as actual similarities (beyond the repetition of the phrase "remind me"). That is because the way that the "Phrase Sets" and "Partner Phrases" are incorporated into the songs structurally is not remotely similar. As indicated above, where the lyrics are shown side by side, the Bowen Work actually uses the phrase "to remind me" (and not merely "remind me") in

complete sentences in the first two iterations in each chorus (the "Phrase Set"), and then the "Partner Phrase," "Baby, remind me," makes an appearance at the end of the chorus:

> All it takes is one kiss **to remind me**
> All I need is your touch **to remind me**
> Yesterday's gone
> Take me to the place we started from
> When love was young
> **Baby, remind me**

In the Paisley Work, "remind me" is sung twice in a row almost every time it appears in the song, a true "Phrase Set," sometimes with "baby" (or other variations) between the two iterations, and comes as a response by the duet partner to the two preceding lines of the chorus:

> [Brad] Been so long that you'd forget
> The way I used to kiss your neck
> [Carrie] **Remind me, remind me**
> [Brad] So on fire so in love
> Way back when we couldn't get enough
> [Carrie] **Remind me, remind me**
>
> . . . .
>
> [Carrie] Do you remember how it used to be
> We'd turn out the lights and we didn't just sleep
> [Brad] **Remind me, baby remind me**
> [Carrie] Oh so on fire so in love
> That look in your eyes that I miss so much
> [Brad] **Remind me, baby remind me**

As the side by side comparison of the Works illustrates, the actual structure and use of the "Phrase Sets" and the usage of the "Partner Phrases" are very different. That is, while both songs use "Phrase Sets," they use them differently. The mere fact that they both use features that a musicologist identifies as a "Phrase Set" and "Partner Phrase" does not lead to the conclusion that use of the features, standing alone and without a showing of a closer identity between their usage in the two Works, is copyrightable.

Finally, with regard to Finell's identification of "similar features in melodic design," the

court notes again that Finell does not assert that any of the sixteen melodies underlying the phrase "remind me" in the Paisley Work is substantially similar to any of the five melodies to which the phrase is set in the Bowen Work. And, while both Works may use a few similar melodic features—essentially musical techniques—they use them differently. For instance, although Finell opines that the lyric "remind me" "always occupies two bars," beginning in the final beat of one bar and continuing into the second bar, in both songs (*id.* at 9, ¶ 24(a)), she does not point out that, in the Bowen Work, the "-mind" of "remind" always occurs in the first downbeat at the beginning of a bar or measure, and, in seven of the nine iterations in the Bowen Work, "remind me" takes up just two measures. In the Paisley Work, both syllables of "remind" take place within one measure and "-mind" does not land on the down beat; "-mind" continues into the following measure and in nearly every case, the entire phrase "remind me" takes up at least three measures. (*See* Finell Report at 10–11 (Musical Examples C & D); *see also* Ferrara Report at 26–27, ¶ 29 (noting that in seventeen of nineteen iterations of "remind me" in the Paisley Work, "-mind is rhythmically syncopated, i.e., it is off the beat, which is a significant rhythmic difference from landing squarely on the downbeat [as] in [the Bowen Work].").)

Finell also maintains that, in both songs, the "-mind" of remind" falls at the highest pitch used in the phrase, lending substantial similarity to the music of the phrases. However, as Ferrara points out, and Finell does not refute, the underlying chord progressions and melodies are not the same, and the steps between the notes in the Paisley Work are much larger; that is, the variation in pitch sequence is typically much greater. (*See* Ferrara Report at 27, ¶ 71 ("[T]he intervals (*i.e.*, spaces) between the pitches in the vocal melodies set to the various forms of 'remind me' lyrics throughout [the Bowen Work] are significantly different from the intervals between the pitches in the vocal melodies set to various forms of 'remind me' lyrics throughout [the Paisley

Work].").) Likewise with respect to the descending minor third interval: both songs use the feature, but with different melody, pitch sequences, and rhythmic durations.

As for the use of the *appoggiatura*, although both Works use this device, they do not use it in the same way melodically or rhythmically. (*See* Ferrara Report at 54, ¶ 136.) For instance, in the Bowen Work, the *appoggiaturas* appear within the syllable "-mind" of "remind." In the Paisley Work they typically appear in "me." (*See* Finell Report at 12 ("Musical Example D").) And again, the *appoggiaturas* in each Work do not involve the same chord progressions or melody. (Ferrara Report at 54, ¶ 136a).) Thus, again, it is unlikely that a lay listener would identify the use of this device as a significant similarity between the Works.

Regarding Finell's argument that both songs vary their melodies in the same ways, for example by raising the syllable "-mind" to one whole tone higher in the second iteration of "remind me" within a "Phrase Set," this "similarity" again is not particularly similar because, in Bowen, the repetition of the phrase "remind me" occurs in the context of two complete sentences, rather than in back-to-back iterations as in the Paisley Work, and the underlying melodies, pitch sequences, and chord progressions are not the same.

In sum, Finell identifies the use of some similar techniques and musical devices, but she does not show that the two Works employ these techniques and devices in the same manner. Further, these technical similarities are overwhelmed by the broader dissimilarities in context, structure, mood, melody, and harmony—the very features a lay listener would be likely to identify. For instance, it would be apparent to any layperson listening to the two songs back to back that the overall mood of the Bowen Work is sad or regretful and sentimental. (*See* Bowen Dep. I, at 93:20–21 (agreeing that the song is "sentimental and sad"); Finell Dep. I, at 119:6–7 (describing Bowen Work as "regretful and perhaps sentimental").) In the Bowen Work, the

lonely narrator regrets the fading of her relationship with an absent partner and pleads that the absent partner "remind" her of the lost love. The Paisley Work, on the other hand, was written specifically as a duet; the mood is not regretful but upbeat and hopeful of reigniting a spark of passion between the man and woman singing the duet. The phrase "remind me" is not a plea but a command sung by one partner to the other to take action to ignite the spark.

While the law is clear that "even a small degree of copying may support a finding of substantial similarity," *Bridgeport Music*, 585 F.3d at 275, for the copying of a small fragment of a work to constitute copyright infringement, that fragment must be "qualitatively important." Here, there is no dispute that the "fragment," "remind me," is qualitatively important to both Works insofar as it constitutes the hook—that portion of the song a listener is likely to get stuck in her mind—but the plaintiff does not allege literal copying of the hook in terms of melody, chord progression, structure or rhythm. Rather, she alleges that the defendants copied her by employing a few technical elements that would be virtually unrecognizable to anyone other than a professional musician or musicologist. And she does not allege that the defendants actually copied her use of these elements—that is, that they used them in the same way. Rather, it is the use *per se* that, she claims, has resulted in the infringement of her copyright.

The court does not reject the proposition that literal copying of some of these "melodic features" could, in some instances, be qualitatively important enough to support a copyright infringement claim. "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity. No plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Murray Hill*, 361 F.3d at 320. In this case, however, the plaintiff does not allege literal copying of anything except the lyric phrases "remind me" and "baby, remind me," and she has not shown that the

defendants' use of some of the same musical techniques and melodic features was similar enough to her use of the same techniques and features to render the expressions of the hook phrases in the two Works substantially similar. In short, the court finds that no reasonable juror could conclude, based on the undisputed evidence, that the songs overall, or the "hook" phrases specifically, are substantially similar.

## IV. CONCLUSION

Because the undisputed facts establish that the allegedly infringing Paisley Work is not substantially similar to the plaintiff's copyrighted Work, the defendants are entitled to summary judgment in their favor. An appropriate order granting the defendants' motion is filed herewith.

ALETA A. TRAUGER
United States District Judge